615 So.2d 1030 (1993)
STATE of Louisiana
v.
Coleman L. MOSES.
No. 92 KA 0394.
Court of Appeal of Louisiana, First Circuit.
March 5, 1993.
Rehearing Denied April 28, 1993.
*1031 Washington Parish Dist. Atty., William J. Burris, Franklinton, William R. Campbell, Jr., New Orleans, for plaintiffState of La.
Richard W. Watts, Franklinton, for defendantColeman Moses.
Before CARTER, LeBLANC and PITCHER, JJ.
CARTER, Judge.
Coleman L. Moses was charged by bill of information with two counts of molestation of a juvenile, violations of LSA-R.S. 14:81.2. He pled not guilty and, after trial by jury, was convicted as charged. The trial court sentenced him to serve a term of five years imprisonment at hard labor on each count. The sentences were to be served concurrently. Defendant appealed, urging four assignments of error.

FACTS
Defendant was the band director at Varnado High School in Washington Parish. He was convicted of having molested two of his female band students on separate occasions in 1990. Both girls were fourteen years old when the offenses occurred and had been in the band with defendant since the sixth grade.
The first incident (which was the subject of count two) occurred in late April of 1990. During band practice one day, defendant asked a female band member why she was not playing her trombone to the best of her ability, and the student explained that she was having problems at home. Because she had to catch the bus, she was not able to discuss the problems with defendant at that time. She later wrote him a letter explaining her family problems and repeatedly asked defendant for the opportunity to discuss the situation with him. After about two weeks, defendant got the victim out of her home economics class and took her to the band room for counseling. The victim indicated that her mother was ill and, as the oldest of several children, she had many obligations at home which made it difficult for her to have time to practice for the band. After discussing the victim's reasons for poor performance, defendant asked the victim about a rash on her face. The conversation was interrupted when the school secretary went in to get defendant for a telephone call. Defendant told the victim to wait for him, and when he returned from the phone call, defendant told the victim about the importance of prayer in solving her problems. He then asked whether her rash had spread. When the victim told him that it had not, he turned her face and started checking further. Defendant undid the top buttons of the victim's blouse and said he was checking for the rash. Eventually defendant put his hand on the victim's bare breast. He then sat her on a chair at the entrance of the storage room. After pulling down the victim's panties and kneeling before her, defendant *1032 touched the victim's vagina with his fingers and began performing oral sex upon her.
The victim's nervousness caused defendant to laugh. When she fell back onto the chair, defendant stopped his actions and warned her, "what goes on in the band stays in the band." This was a statement defendant frequently made to the band members. Before escorting the victim to her next class, defendant agreed to help her sell tickets for a production in which she was involved. (One of the problems the victim had discussed with defendant was her difficulty in having time to sell the tickets.) Initially, the victim did not tell anyone about defendant's actions. Defendant had regularly counseled the victim, as well as other band members, and she was ashamed, confused, and embarrassed by defendant's actions. Additionally, she did not want to tell her mother because her mother was sick at the time.
On May 2, 1990, defendant molested a second female band student. (This incident is the subject of count one.) Defendant took the student out of band practice and brought her into the school library to discuss rumors of her being pregnant. During the conversation, one of the school custodians came into the library, but left when defendant pushed him out the door and told him not to come into the library at that time. Defendant then locked the library door and began rubbing the student's stomach on the outside of her shirt. He explained that he was trying to determine if she was pregnant. He then told her to pull down her shorts and underwear, which she did. Defendant instructed the girl to sit in a chair and raise her legs. He then started touching and feeling her vaginal area. Because she was crying, defendant told her to wash her face in the bathroom. He then walked with her to the bathroom and told her not to tell anyone what had happened because "what goes [sic] in the band stays in the band." When the student returned to the practice field, she was still crying so defendant ended the practice and told the student he would drive her home and tell her mother that he thought she was pregnant. Defendant had never before driven the girl home. He initially drove in the wrong direction, but, when she told him he was going the wrong way, he turned the car around and took her home. Upon their arrival, defendant told the girl's mother about the pregnancy, and the mother became very upset. The victim testified that, although she had an idea she was pregnant, she had not told her mother earlier because she feared that her mother would be angry.
When the victim's mother left the house to go to the store, the victim told her aunt that she had been molested by defendant. Her mother was later informed when she returned from the store. The victim then began walking to her grandmother's house, and on her way, she ran into the first victim. (The girls were close friends). The first victim asked her why she had been crying at band practice that day, and the second victim revealed defendant's acts of sexual abuse. The first victim then shared her own story of defendant's abuse.
Defendant testified in his own defense and denied the allegations of impropriety. He admitted having counseled the two girls, and he even admitted touching the second victim's stomach, but he denied molesting the girls. Defendant presented the testimony of the school principal, the school secretary, and his wife to establish that the first victim's testimony concerning the time of the counseling session was inaccurate. Defendant also presented the testimony of the school custodian who had entered the library during the counseling session with the second victim. The custodian testified that defendant did not say anything to him or touch him in any way when he entered the library. Because he suspected defendant and the student were discussing something private, he exited the library on his own. A former band member and recent graduate of the school also testified on defendant's behalf. She stated that she had frequently worked alone with defendant while she was in the band, but defendant had never made an improper advance toward her.

*1033 INSUFFICIENT EVIDENCE
In the first two assignments of error, defendant asserts that the evidence was insufficient to support his convictions. Defendant specifically attacks the credibility of the victims. Defendant claims the testimony of the first victim was unreliable since some of her testimony was contradicted by the testimony of her school principal and the school secretary. Moreover, defendant contends that her behavior and actions after the alleged offense were inconsistent with the allegations she lodged against defendant. Defendant also claims that the second victim concocted the molestation allegations because she feared her mother's reaction to her pregnancy.
In reviewing claims challenging the sufficiency of the evidence, this court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original). See also LSA-C.Cr.P. art. 821B; State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988). In making this determination, "the reviewing court is not called upon to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence." State v. Mussall, 523 So.2d at 1311.
Defendant does not claim that the victims' testimony, if credible, would be insufficient to establish the various elements of the offenses. Instead, defendant asserts the evidence was insufficient because the testimony was incredible. However, it is well settled that the trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir. 1984).
Much of the first victim's testimony was corroborated by defendant's own testimony. Defendant admitted that, during the month alleged, he counseled this student after getting her out of her home economics class. According to defendant, the counseling session took place in the band room and was interrupted by the school secretary when she went in to get him for a telephone call. Defendant also testified that he noticed a rash on the victim. Although the victim's testimony that the counseling session occurred early in the school day, starting just after 8:00 a.m. and continuing throughout the first class period, differed from the time suggested by defendant's witnesses, this discrepancy was explained by defendant's own testimony that the counseling session took place on a day when testing at the school resulted in morning classes being held in the afternoon. Thus, the victim's recollection that the incident occurred during her first period home economics class was accurate.
Defendant further disputes the first victim's credibility by claiming that her actions following the alleged incident were inappropriate. Defendant refers to a letter the victim wrote to him, thanking him for his understanding. Defendant testified that this letter was written after the counseling session. However, the victim testified that the letter was written before the incident. Defendant's minister testified that, at a meeting with defendant, defendant's wife, defendant's mother, the victim, and the victim's mother, the victim indicated that defendant did not need to apologize to her. Considering the victim's age and her confusion over the entire incident, we find that a rational jury could conclude that the victim's failure to request an apology has no bearing on her credibility.
We also find that significant portions of the second victim's testimony were corroborated by defendant's testimony. Defendant admitted bringing the victim into the school library to discuss rumors concerning her pregnancy, admitted a school custodian came in at the beginning of the conversation, admitted touching the victim's stomach, and admitted taking her home and telling her mother about her pregnancy.
Prior to these offenses, both victims liked and admired defendant; therefore, they had no reason to lie. Although defendant claims the allegations were created by the young women to protect the second *1034 victim when her mother found out about the pregnancy, no evidence in the record supports that claim. The victims provided detailed information about the incidents, and none of defendant's allegations support a finding that the jury's decision to accept the testimony of the victims was irrational. After reviewing the trial testimony, we conclude that a rational trier of fact, interpreting all of the evidence in the light most favorable to the prosecution, could have found the essential elements of the offenses beyond a reasonable doubt. See State v. Mussall, 523 So.2d at 1309-10. Accordingly, these assignments of error are without merit.

CONSTITUTIONALITY OF STATUTE
In the third assignment of error, defendant contends that the molestation of a juvenile statute is unconstitutional because the penalty provisions distinguish between an offender who has "control or supervision" over the juvenile and an offender who does not. Defendant asserts that this differentiation is a denial of equal protection guaranteed under the Fourteenth Amendment because there is no rational basis for the disparity in punishment.
Molestation of a juvenile is defined as follows:
Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile....

LSA-R.S. 14:81.2A (emphasis added). The general penalty for the crime of molestation of a juvenile is a fine of not more than five thousand dollars, or imprisonment, with or without hard labor, for not less than one nor more than ten years, or both. LSA-R.S. 14:81.2B. If the offender has "control or supervision" over the juvenile, the penalty is increased to a fine of not more than ten thousand dollars, or imprisonment, with or without hard labor, for not less than one nor more than fifteen years, or both. LSA-R.S. 14:81.2C.
As the Louisiana Supreme Court indicated in State v. Bonanno, 384 So.2d 355, 359 (La.1980):
It is well settled that the Legislature is afforded wide latitude in making statutory classifications affecting the public health, safety and welfare. It is equally well settled that these statutes will be upheld upon a showing of some rational relationship to a legitimate legislative purpose.
Thus, in the instant case, we must determine if the harsher penalty provision for a defendant convicted of molestation of a juvenile where the offender has control or supervision over a juvenile is rationally related to some legitimate state purpose. See State v. Bonanno, 384 So.2d at 359.
An offender who has control or supervision over a juvenile is in a position of trust. Because the person has control over the juvenile, the juvenile might be less likely to report the offense. Additionally, there is a likelihood that the abuse will be repeated when the offender next comes into contact with the juvenile. Therefore, the distinction has a rational relationship to a legitimate legislative purpose. We conclude that the statute is constitutional and does not violate defendant's guarantee of equal protection. Therefore, the assignment of error is without merit.

SENTENCING
LSA-C.Cr.P. article 894.1 (prior to its amendment by Acts 1991, No. 22, § 1) requires the trial court to weigh both aggravating and mitigating circumstances in imposing sentence. While the trial court is not required to articulate every such circumstance in imposing sentence, the record must reveal adequate consideration of the guidelines enumerated in article 894.1. State v. Greer, 572 So.2d 1166, 1171 (La. App. 1st Cir.1990). Given compliance with *1035 the sentencing criteria of LSA-C.Cr.P. art. 894.1, the sentence will not be set aside in the absence of manifest abuse of discretion. See State v. Washington, 414 So.2d 313, 315 (La.1982). A sentence imposed without the assignment of reasons will not be set aside automatically on appeal, but will be set aside for resentencing only if the record is inadequate or if the record clearly indicates that the sentence is excessive. State v. Greer, 572 So.2d at 1171.
The factors guiding the decision of the trial court are necessary for an appellate court to adequately review a sentence for excessiveness and, therefore, should be in the record. Otherwise, a sentence may appear to be arbitrary or excessive and not individualized to the particular defendant. When the reasons for an apparently severe sentence, in relation to the particular defendant and the actual offense committed, do not appear in the record, a sentence may be vacated and remanded for resentencing. State v. Pike, 426 So.2d 1329, 1335 (La. 1983).
Before sentencing defendant in this case, the court indicated that it had reviewed the presentence investigation report and numerous letters submitted on defendant's behalf. The court also indicated that, prior to reading the letters, it considered giving defendant the maximum sentence or at least twelve years. However, after reading the letters, the court recognized the contributions defendant has made to society and viewed the offenses as "an aberration, a one-time thing." The court also heard the testimony of nine witnesses who testified at an extensive sentencing hearing. The victims each testified that after reporting the offenses, they noticed people whispering about them. Both young women were seeing the school counselor as a result of the problems caused by defendant's actions. After the hearing, the court noted the effect the offenses would have on the victims who were not as prominent in the community or as well-known as defendant.
On appeal, defendant specifically alleges that the court insufficiently considered the following factors: defendant's lack of a criminal record, defendant's character and attitude, the likelihood that defendant would respond affirmatively to probation with counseling and psychiatric treatment, the remote possibility that defendant would commit another crime, and defendant's position in the community as a minister. While these factors were included in various sources available to the court (character witnesses who testified at the sentencing hearing, letters attached to the PSI, and the PSI), the court's comments at the time of sentencing do not reveal the particular factors about this defendant upon which the court based its decision to sentence defendant to concurrent five-year terms of imprisonment. Additionally, the court erred when it stated that the PSI recommended the maximum term of imprisonment. The officer preparing the PSI did not include a specific recommendation, other than to indicate that defendant was eligible for probation and suspended sentences.
Accordingly, we vacate the sentences and remand this case for resentencing. By doing so, we are not specifically finding the sentences to be excessive. The trial court may have good reasons for imposing terms of imprisonment, but those reasons are not articulated and do not appear in the instant record.
In resentencing defendant, the trial court is directed to the provisions of LSA-C.Cr.P. art. 894.1, as amended by Acts 1991, No. 22 (eff. Jan. 1, 1992). See State v. Blue, 591 So.2d 1172 (La.1992). Additionally, the court should give defendant credit toward service of his sentences for time spent in actual custody prior to imposition of the new sentences. See LSA-C.Cr.P. art. 880; State v. Greer, 572 So.2d at 1172.

CONCLUSION
For the above reasons, defendant's convictions are affirmed, sentences are vacated, and the case is remanded for resentencing.
CONVICTIONS AFFIRMED; SENTENCES VACATED; REMANDED FOR RESENTENCING.
*1036 LeBLANC, J., concurs in part and dissents in part. I would affirm the conviction and sentence.