MOORE, J.
hThe defendant, Ronald Charles Dale, was convicted of molestation of a juvenile undér the age of 13, a violation of La. R.S. 14:81.2(A). Following adjudication as a second felony . offender, Dale was sentenced to 49½ years at hard labor, the first 25 to be served without the benefit' of parole. • Dale now appeals, alleging insufficient evidence to convict, improper intro-: duction of- “other acts” evidence, and an excessive sentence. - For the following reasons, we affirm the conviction and sentence. However,, we remand the case to the trial court for compliance with La. R.S. 15:542 and 15:543. ■ -
FACTS
The charges against Dale, age 46, followed a-, police investigation that began after the victim, K.W., age 6 at the time of the'offense, reported to her father that “Uncle Ronnie” had been touching her and “hunching” on her while she was in the home of her maternal great-grandmother, Elloise Clarkson. K.W. repeated the story to her mother, Ms. Clarkson’s granddaughter and the. defendant’s niece, K.W.’s father reported the, incident to Detective John Flores of the Shreveport Police Department.
*532 Subsequently, K.W. was interviewed at the Gingerbread House where she described Dale’s conduct to a forensic interviewer, Jennifer Plippo. K.W. revealed that Dale told her to lie on his bed where he got on top of her to “do what parents do.” K.W. said that Dale would “hunch” her and move around. She said both Dale and K.W. had their clothes on during the incidents, which happened more than once, and only when she was at Ms. Clarkson’s house. K.W. said she did not think anyone saw what happened. [2Ms. Clarkson was always in the living room when it occurred.
Dale resides in the home with Ms. Clarkson, and he has his own bedroom located at the end of the hallway. According to Ms. Clarkson, it was not possible to see inside his room from the living room.
KW’s mother testified that she occasionally left K.W. and her two sisters at Ms. Clarkson’s home for two or three hours at a time, but did not recall ever leaving them overnight. She further testified that Dale had her permission to discipline K.W. in Ms. Clarkson’s home because he was an adult and a family member.
Ms. Clarkson testified that she was always home when K.W. was at her house. The children played board games and dominoes, watched television, or played outside. Ms. Clarkson and Ralph Evans, a cousin, testified that the children would sometimes jump on Dale’s bed, watch television in his room, and play dominoes with Dale in his room, but only until they got unruly, and then he would make them leave.
In the course of their investigation, police learned that Dale had allegedly done similar things to KW.’s mother when she was young. KW.’s mother testified that Dale would take her to his room, climb on top of her and move around on her while both had their clothes on. She said she was five or six years old, and that Dale was “grown.” She could not recall the number of times that he did this to her.
Detective Flores brought Dale in for questioning. During the recorded interview, Dale admitted to touching KW.’s mother when she was young and to touching K.W. Dale was subsequently arrested and ultimately ^charged with one count of molestation of a juvenile under the age of 13, La. R.S. 14:81.2(A), (D)(1) and (E)(1), by a third amended bill of information.
At trial, Det. Graves, Jennifer Flippo, K.W., and KW.’s mother and father testified on behalf of the prosecution. Ms. Clarkson and Mr. Evans testified for the defense.
In addition to the facts above, Ms. Clarkson stated that she was certain that nothing could have happened to KW. because she was always home when K.W. was at her house, and she never allowed K.W. to be in Dale’s room with the door closed. Mr. Evans testified that he never saw anything inappropriate while living at Ms. Clarkson’s house, and that Dale and K.W. seemed to get along fine. Evans admitted, however, that he was not present at the home between 8:00 a.m. and 4:30 p.m. on most weekdays.
Following the two-day bench trial, the trial judge entered a verdict of guilty as charged.
Dale filed a motion for new trial and a motion for post-verdict judgment of acquittal. Both motions were denied on October 20, 2014, on which date the trial judge adjudicated Dale a second-felony offender, based on the instant conviction and a 2004 conviction for unauthorized entry of an inhabited dwelling.
The court sentenced Dale to 49½ years’ imprisonment, the first 25 of which to be served without the benefit of parole, and noted that this sentence was the mandato *533 ry minimum permitted by La. R.S. 15:529.1. At sentencing, the court stated that he considered the following facts to be aggravating factors: the offense was a heinous crime; the victim was a Ryoung, particularly vulnerable child; and, Dale’s extensive criminal history.
The trial judge found the following mitigating factors: there was no element of violence in the crime; the character letters on behalf of the defendant; and, the minimum mandatory sentence required by law is sufficiently harsh to meet punitive and rehabilitative requirements.
Dale subsequently filed a motion to reconsider sentence. The trial court denied this motion, holding that the record demonstrated a thoughtful consideration of aggravating and mitigating factors and that the 49⅜ year sentence was the mandatory minimum.
This appeal followed. Dale urges three assignments of error: sufficiency of the evidence, improper introduction of “other acts” evidence, and excessive sentence.
DISCUSSION
By his first assignment of error, Dale contends that the state failed to present sufficient evidence to support all the elements of the crime of molestation of a juvenile under the age of 13, especially the requirement that the victim was under his supervision or control at the time of the offense. Also, Dale complains that there was no physical evidence of the offense— only the testimony of the victim, and that the state did not establish the date of the offense.
The standard of review for an evidence sufficiency claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Johnson, 47,913 (La.App. 2 Cir. 4/10/13), 113 So.3d 1209. An appellate court does not substitute its own appreciation of the evidence for that of the fact finder, or assess the credibility of witnesses or reweigh evidence. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Johnson, supra, at 113 So.3d 1209.
Louisiana R.S. 14:81.2 defines molestation of a juvenile:
A. (1) Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention: of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile: Lack of knowledge of the juvenile’s - age shall not be a defense.
Dale does not contest that the state proved three of the four elements of the offense, namely, (1) the age difference between Dale and K.W.; (2) that Dale’s acts were lewd or lascivious; and (3) that Dale had the intention of arousing or gratifying his sexual desires. He argues that the evidence did not establish the fourth element, that K.W. was under his supervision or control at the time of the alleged misconduct. He also contends that the conviction cannot be upheld based solely on the testimony of the minor victim without any medical or physical evidence. Finally, he *534 contends the state failed to prove when the incident(s) occurred.
The facts established by the testimony of the victim indicate that Dale used the victim to sexually gratify himself by simulated copulation while |6both he and K.W. remained fully clothed. Consequently, one would not expect there would be physical or medical evidence of the offense. However, the testimony of a sexual assault victim alone is sufficient to convict a defendant. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Johnson, supra at 1209; State v. Chandler, 41,063 (La.App. 2 Cir. 9/8/06), 939 So.2d 574, writ denied, 2006-2554 (La.5/11/07), 955 So.2d 1277; State v. Ellis, 38,740 (La.App. 2 Cir. 8/18/04), 880 So.2d 214.
In this instance, the fact finder found K.W.’s .testimony to be credible, stating that her testimony was specific, detailed and compelling. The trial judge also found K.W. to be a credible witness under La. C.E. art. 601. Prior to trial, the district court held a hearing and determined that the statements made by K.W. during the Gingerbread House recorded interview were credible and that the interview and recording were in compliance with La. R.S. 15:440.2 and La. R.S. 15:440.4.
When issuing its verdict, the court stated:
I believe that the case law is very , clear ... that the nature of the acts alleged admitted to by the defendant based , on his statements and the nature of the acts stated by the victim are sufficient in and of themselves by their very nature to reveal them intent which was to arouse the sexual gratification or gratify the sexual desires of the defendant.
Finally, Dale’s recorded statement to Det. Graves wherein he admitted to touching KW. was played at trial. Even absent this confession, Louisiana law. clearly permits a finder of.fact to convict a defendant of a sex crime based on only the testimony of the victim, especially when that ^testimony has been found to meet the statutory requirements for’ credibility on multiple occasions.
The trial court found the testimony of K.W. and Dale’s admissions to be sufficient evidence, to prove the offense of molestation of a juvenile. We conclude that the trial court did not abuse its discretion. Hence, this part of the assignment is without merit.
We also conclude that Dale’s complaint that the state failed to prove the time and • date of the offense is without merit. The date and time of the offense of molestation of a juvenile are not essential elements of the offense. State v. Mickens, 31,737 (La.App. 2. Cir. 3/31/99), 731 So.2d 463, writ denied, 99-1078 (La.9/24/99), 747 So.2d 1118. La. C. Cr. P. art. 468 requires a specific date and time only when the crime is “dependent upon the defendant’s act having been committed on a specific date, such as election day or Sunday.” Id., Comment b.

The Supervision and Control Element

Dale argues that the evidence presented at trial was insufficient to prove that Dale was in a position of supervision or control over K.W. during the time of the alleged molestation. We disagree.
The harsher penalty provision for molestation of a juvenile where' the offender has control or supervision over a juvenile exists because an offender who has control or supervision over a juvenile is in a position of trust. State v. Moses, 615 So.2d 1030 (La.App. 1 Cir.), writ de *535 nied, 624 So.2d 1223 (1993). The meaning of, the phrase, “influence by virtue . of a position of control or supervision,” in La. R.S. 14:81.2 is, “not restricted in | Rits application to persons to whom the parent entrusts the child for care, usually for a fee, such as babysitters, child care workers or teachers.” State v. Shelton, 545 So.2d 1285 (La.App. 2 Cir.), writ denied, 552 So.2d 377 (1989); State v. Onstead, 03-1413 (La.App. 5 Cir. 5/26/04), 875 So.2d 908. Rather, the statute permits finding evidence of supervision or control by noncustodial parents, relatives, friends and neighbors of young victims. State v. Ellis, supra. Louisiana courts consider the following factors when making a determination as to whether a defendant used influence by virtue of his .position of supervision or control over the victim:
(1) the amount of time the defendant spent alone with the victim; ,,
(2) the nature of- the relationship between the victim and the defendant; .
(3) the defendant’s age; and-
(4) the defendant’s authority to discipline.
Burton v. Cain, CIV.A. 11-1781, 2012 WL 5966532 (E.D.La. Aug. 21, 2012), report and recommendation approved, CIV A. 11-1781, 2012 WL 5960197 (E.D.La. Nov.28, 2012).
Applying these factors to the instant case, we conclude that the evidence sufficiently supports this element of the offense. K.W.’s mother was raised in the home of Ms. Clarkson, K.W.’s grandmother. She testified that' she occasionally dropped off K.W. and her sisters ‘ at the house for several hours. Dale was a member of the family (apparently KW.’s great uncle) known to the victim as “Uncle Ronnie.” At the time of the offense, he was 46 years old, while K.W. was only 6 years old. K.W.’s mother testified that Dale had permission to discipline K.W. .at .Ms. Clark-son’s Iflhouse because he was an adult in the house. K.W. and Dale had a seemingly typical niece-uncle relationship. As an adult family member in the household, Dale occupied á position of trust.
According to Ms. Clarkson, Dale attended family events at KW.’s mother’s house. She confirmed'-that he was- sometimes at Ms. Clarkson’s home when K.W. was there. Although Ms. Clarkson maintained that she was always.present when K.W. was at her home and she alone disciplined or supervised K.W., she also testified that K.W. played in Dale’s room. She said that Dale would kick K.W. and- the other children out of his room when' they got disruptive. She admitted that she could not see into Dale’s room from the living room.
K.W. stated in the Gingerbread House interview and verified in her testimony that Dale told her to get on his bed whereupon he would touch her, rub up on her, and “hunch on” her in his room with the door closed; no one else was in the room during these incidents, and that Ms. Clark-son- was at home when it occurred.
After close review, we conclude that the trial court did not err in concluding that the evidence was sufficient to. prove beyond a reasonable, doubt that the relationship between Dale and K.W. was a relationship of .trust and that .Dale held a position of authority from the standpoint of KW. Dale was a familiar member of the extended family who was present in the home when K.W. visited. K.W.’s mother testified that she loved Dale as her uncle and entrusted him to supervise K.W, by virtue' of the family relationship and him being an adult. The victim, a six-year old child, was linnot in an autonomous position to come and go from the home as she pleased. We conclude that K.W. allowed the defendant to perform the illicit acts because she was told to do so.
*536 Therefore, this - assignment is without merit.

Other Acts Evidence

By his second assignment of error, the defendant argues that the court erred when it allowed the state to introduce testimony of other alleged acts of misconduct to show a lustful disposition by Mr. Dale.
The state elicited testimony from KW.’s mother that Dale committed similar illicit acts on her when she was a young child 5 or 6 years old. Dale contends that these allegations were unadjudicated, prescribed, unsubstantiated and unproven, thereby violating La. C.E. art. 404(B)(1). Additionally, both Dale and the victim’s mother were minors at the time of the alleged inappropriate contact.[1] As a result, the defense argues that the admission of K.W.’s mother’s testimony violates La. C.E. art. 403, that is, the prejudicial effect of such evidence outweighed its probative value.
The state maintains that it followed the correct procedures in order to admit the testimony under La. C.E. art. 412.2. The trial court’s limitation on the use of the testimony combined with the fact that defendant’s trial was a bench trial (as opposed to á jury trial) significantly reduced the potential prejudicial effect of the testimony. According to the state, even if the trial court abused its discretion by admitting this “prior' acts” testimony, it was harmless error.
| ri Generally, evidence of other acts of misconduct is not admissible because it creates the risk that the defendant will be convicted of the present offense simply because the unrelated evidence establishes him as a “bad person.” La. C.E. art. 404(B); State v. Jackson, 625 So.2d 146 (La.1993). However, La. C.E. art. 412.2 allows admission of evidence of other similar crimes when the victim in the case at issue is a child under the age of 17. State v. Zornes, 34,070 (La.App. 2 Cir, 4/3/02), 814 So.2d 113, writ denied, 2002-1280 (La.11/27/02), 831 So.2d 269.
La. C.E. art. 412.2 provides in pertinent part:
A. When the accused is charged with ... acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused’s commission of another crime, wrong, or act involving ... acts which indicate a lustful disposition toward children may be •admissible and may be considered for its bearing on any1 matter to which it is relevant[.]
It is not necessary, for purposes of Art. 412.2 testimony, for the defendant to have been charged, prosecuted,- or convicted of the “other acts” described. State v. Layton, 2014-1910 (La.3/17/15), 168 So.3d 358; State v. Wright, 2011-0141 (La.12/6/11), 79 So.3d 309. The admissibility of such statements under La. C.E. art. 412.2 is dependent on whether the probative valpe of the statements substantially outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or waste of time. La. C.E. art. 403; State v. Johnson, 43,843 (La.App. 2 Cir. 1/28/09), 2 So.3d 606, writ, denied, 2009-0464 (La.11/6/09), 21 So.3d 300. Remoteness in time is a factor in balancing probative value against prejudicial effect, but it is not | ^determinative. State v. Miller, 98-0301 (La.9/9/98), 718 So.2d 960; State v. Jackson, supra, at 146. A trial court’s ruling on the admissibility of such evidence will *537 not be overturned absent an abuse of discretion. State v. Preston, 47,273 (La.App. 2 Cir. 8/8/12), 103 So.3d 525.
Even if an appellate court determines that the trial court abused its discretion in admitting evidence under La. C.E. art. 412.2, such an introduction is subject to harmless error analysis on appeal. State v. Parker, 42,311 (La.App. 2 Cir. 8/15/07), 963 So.2d 497, writ denied, 2007-2053 (La.3/7/08), 977 So.2d 896. The proper analysis for harmless error review-in sexually assaultive behavior is for the reviewing court to determine whether the guilty verdict actually rendered at trial was surely unattributable to the erroneous admission of La. C.E. art. 412.2 evidence. Id.
After review, we conclude that the evidence admitted did not constitute an abuse of discretion. At the Art. 412.2 hearing, the trial-court stated:
[Gjiven the extreme similarity of the ages of the .victims, not necessarily the factual circumstances surrounding the alleged actions, but the gap in age between the defendant at the time of the alleged conduct and the age of the alleged victim, I think that it is sufficiently probative to establish or be even more probative (inaudible) regarding a lustful disposition towards. This is not conduct between two teens or two pre-adoles-cents, this is a teen and a pre-adoles-cent. So I will rule that it is admissible subject to the statement of the defendant in which he allegedly admitted some degree of the conduct being found admissible having been subject to a pretrial hearing.
Furthermore, the trial court specifically limited the admission of the mother’s testimony for corroborative purposes of Dale’s recorded admission to previously touching KW.’s mother in similar ways as he did K.W., and 11sonly for the purposes of La. C.E. art. 412.2.
Defendant’s argumeht that the admission of the prior acts evidence was extremely prejudicial' and constituted ah abuse of the trial court’s discretion is couched in La. C.E. art. 404(B), i.e., the genéral prohibition against admitting evidence to show that a defendant has a propensity for a certain type of offense. However, La. C.E. art. 412.2 provides an exception to La. C.E. art. 404(B)(1).
The trial court found sufficient similarities between Dale’s alleged acts against KW.’s mother and K.W. Both alleged victims were around the same age at the time of the alleged conduct. The record demonstrates Dale had a lustful disposition toward pre-adolescent gilds when he was of significantly older age.
Dale also contends that the prior acts testimony is inadmissible because both Dale and KW.’s mother were minors at the time of the alleged incidents. However, our jurisprudence does not expressly prohibit admission of evidence of sexually assaultive behavior exhibited during minority. See State v. Gordon, 2013-0495 (La.App. 4 Cir. 7/16/14), 146 So.3d 758, writ denied, 2014-1748 (La.6/19/15), 171 So.3d 958 (defendant’s aggravated rape conviction, received at age 16 admitted for purposes of La. C.E. art. 412.2). The admission of KW.’s mother’s statement was not improper because both Dale and KW.’s mother were juveniles at the time of the alleged misconduct.
We 'therefore conclude that the trial court did hot abuse its discretion by admitting K.W.’s mother’s 'testimony describing Dale’s prior acts to 114show a “lustful disposition.”
jEven if the admission constituted an abuse of discretion, the admission is harmless error. The trial court outlined *538 its reasons for the guilty verdict and did not mention KW.’s mother’s testimony while issuing his verdict. Although -this fact is not determinative, we conclude that the specificity and consistency of KW.’s testimony in the Gingerbread House interview, at trial, and in her disclosure statements to her mother and father were more than adequate to convict Dale of molestation of a juvenile under the age of 13, with or without the mother’s prior acts testimony. We conclude that the trial court’s verdict was “surely unattributable” to the mother’s testimony of the defendant’s past behavior.. This assignment is therefore without merit.

Excessive Sentence

By his final assignment of error, Dale argues that the sentence of 49½ years at hard labor is excessive. He contends that since he is now age 50, the result of the trial court’s sentence of 49½ years is a virtual life sentence, and thus disproportionate to the acts involved, thereby shocking one’s sense of justice.
The state argues that the trial court thoughtfully considered the aggravating and mitigating factors under La. C. Cr. P. art-. 894.1 when it imposed sentence. Additionally, the trial coürt ■ sentenced the defendant to the minimum permitted by statute. According to the state, Dale’s sentence is not necessarily a life sentence because he may be released on parole after 25 years. The state argues -that the trial court did not abuse its discretion in | ^sentencing the defendant to 49⅛ years at hard labor, the first 25 years of which are to be served without benefit of parole.
The trial judge is given wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Williams, 2003-3514 (La.12/13/04), 893 So.2d 7.
Where there is a mandatory sentence, there is. no need for the trial court to justify, under Art. 894.1, a sentence it is legally required to impose. State v. Burd, 40,480 (La.App. 2 Cir. 1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35; State v. Koon, 31,177 (La. App. 2 Cir. 2/24/99), 730 So.2d 503.
Since the habitual offender law is constitutional in its entirety, the' minimum sentences it imposes upon recidivists are also presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Gay, 34,371 (La.App. 2 Cir. 4/4/01), 784 So.2d.714.
The legislature’s determination of an . appropriate minimum sentence should be afforded great deference by the judiciary. State v. Johnson, supra. While the Louisiana Supreme Court has stated that courts have the power to declare a mandatory minimum sentence excessive under La. Const. Art. I, § 20, this power should only be exercised in rare- cases and only when the court is firmly convinced that the ■ minimum sentence is excessive. State v. Ponsell, 33,543 (La.App. 2 Cir. 8/23/00), 766 So.2d 678, writ denied, (La.10/12/01), 799 So.2d 490.
[1(iA court may depart below the mandatory minimum sentence only if it finds clear and convincing evidence in the particular case before it which would rebut the presumption of constitutionality. State v. Gay, supra. The defendant bears the burden of showing that a deviation below the mandatory minimum is warranted. State v. Stevens, 33,700 (La.App. 2 Cir. 8/23/00), 766 So.2d 634. The defendant must make a showing that his circumstances are “exceptional” — that he “is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to *539 the culpability of the offender, the gravity of the offense, and, the circumstances of the case.” State v. Johnson, supra; State v. Robbins, 43,240 (La.App. 2 Cir., 6/4/08), 986 So.2d 828, writ denied, 2008-1438 (La.2/20/09), 1 So.3d 494; State v. Wade, 36,295 (La.App. 2 Cir. 10/23/02), 832 So.2d 977, writ denied, 2002-2875 (La.4/4/03), 840 So.2d 1213.
La. R.S. 14:81.2, molestation of a juvenile under the age of 13, states in pertinent part:
E.(l) Whoever commits the crime , of molestation of a juvenile when the victim is under the age of thirteen years shall be imprisoned at hard labor for not less than twenty-five years nor more than ninety-nine years. At least twenty-five years of the sentence imposed shall be served without benefit of probation, parole; or suspension of sentence.,
La. R.S. 15:529.1, the Habitual Offender law, states in pertinent part:
A. Any person who, after having been convicted within this state of a felony ... thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(1) If the felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not |17more than twice the longest term prescribed for a first conviction.
Based- on La. R.S. 14:81.2 and La. R.S. 15:529.1, the range within which Dale could be sentenced is 49½ years to 198 years, the first 25 years of which must be served without the benefit of parole.
In this instance, the sentencing judge considered Dale’s age, criminal history, character letters, and the fact that the crime did not involve violence. When imposing the mandatory minimum sentence permitted by statute, the court stated that “the minimum mandatory sentence required by the habitual offender bill law, given the- defendant’s age, is sufficiently harsh to meet any punitive or rehabilitative requirements and.obviates any risks that could be associated with any release of the defendant.” The court denied defendant’s motion to reconsider using the same rationale. It is ■ clear from the court’s reference to Dale’s age that it was well aware that Dale’s sentence would likely. result in his imprisonment for the remainder of his life. ,
We are aware of no law or jurisprudence that declares a minimum sentence that results in a de facto life sentence an “exceptional” circumstance for which a judge should depart from the mandatory minimum sentence. Furthermore, the fact that Dale’s crime did not involve physical violence is not sufficient to demonstrate that his sentence was1 excessive. The record presents an adequate factual basis for Dale’s 49⅛ years at hard labor sentence: (a) Dale committed lewd and lascivious acts upon K.W., á six-year-old female; (b) on Dale’s bed in Dale’s room at Ms. Clarkson’s home; (c) with the intent of sexual arousal and/or gratification. See, e.g. State v. Humphries, 40,810 (La.App. 2 Cir. 4/12/06), 927 So.2d 650, writ denied, 2006-1472 (La.12/15/06), 944 So.2d 1284.
The legislatively mandated sentence is undeniably harsh and reflects the Louisiana legislature’s intent to deal severely with sex offenders victimizing children. For this reason, .we cannot conclude that it is constitutionally excessive. Accordingly, this assignment is without merit.

Error Patent Review

A review of the record reveals that the trial court did not properly inform Dale of the sex offender notification requirements outlined in La. R.S. 15:543. At *540 all relevant times, molestation of a juvenile has been defined as a sex offense by La. R.S. 15:541. La. R.S. 15:542 provides registration requirements for sex offenders. In addition, La. R.S. 15:543 requires that the trial court notify a defendant charged with a sex offense in writing of the registration requirements. There being no indication in the record as to whether Dale is aware of the sex offender registration requirements, we remand this case to the trial court solely for the purpose of providing him the appropriate written notice of the sex offender registration requirement. State v. Williams, 49,249 (La.App. 2 Cir. 10/1/14); 149 So.3d 462, writ denied, 2014-2130 (La.5/22/15), 173 So.3d 1167; State v. Scott, 42,997 (La.App. 2 Cir. 2/13/08), 975 So.2d 782.
CONCLUSION
For the foregoing reasons, we affirm the defendant’s conviction and sentence. We remand to the trial court with instructions to the trial court to provide the defendant with appropriate written notice of his sex offender | ^registration obligations, as required by La. R.S. 15:542 and 15:543.
CONVICTION AND SENTENCE AFFIRMED; REMANDED WITH INSTRUCTIONS.

. The record indicates that the defendant is 10 years older than K.W’s mother, making him around 16 years old at the time of the alleged incident,