Judgment rendered May 25, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 54,383-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                    Appellee

versus

KEVIN GAINES                          Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 340106

Honorable Donald Edgar Hathaway, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Edward Kelly Bauman

JAMES E. STEWART, SR.                Counsel for Appellee
District Attorney

JASON W. WALTMAN
VICTORIA T. WASHINGTON
ALEX L. PORUBSKY
Assistant District Attorneys

* * * * *

Before STONE, STEPHENS, and THOMPSON, JJ.

**STONE, J.**

This criminal appeal arises from the First Judicial District Court, the Honorable Judge Donald E. Hathaway, Jr., presiding. The defendant, Kevin Gaines, Sr. ("defendant"), was charged with three counts of molestation of a juvenile under the age of 13 in violation of La. R.S. 14:81.2(A) and (D)(1) and one count of pornography involving a juvenile under the age of 13 in violation of La. R.S. 14:81.1. After a bench trial, the defendant was found guilty on all four counts and sentenced to 50 years of imprisonment at hard labor without the possibility of probation, parole, or suspension of sentence for each count of molestation and sentenced to 20 years of imprisonment at hard labor without the possibility of probation, parole, or suspension for the pornography count. The trial court ordered that the sentences run consecutively with each other, resulting in a total sentence of 170 years. Additionally, the court ordered the defendant to pay a fine of $10,000 through inmate banking. The defendant now appeals his sentence as excessive.

## FACTS AND PROCEDURAL HISTORY

On April 12, 2016, Nora Gaines ("Mrs. Gaines")[1] was changing the sheets in the bedroom she shared with defendant when she found the defendant's old cellphone underneath the mattress. Mrs. Gaines powered the phone on and while looking through the contents of the phone, discovered pictures of women in lingerie. Since she considered the pictures proof of her husband's infidelity, she asked A.B.[2] (her adult daughter) to help get the

---

[1] Nora Bryant, as she is now known, is the former wife of the defendant.
[2] To protect the privacy of the victims and their parents, the victims will be referred to by their initials pursuant to La. R.S. 46:1844(W).

pictures developed at Walgreens for possible use as evidence against the defendant in a divorce proceeding.  A.B. assisted her mother in downloading the pictures to the Walgreens online service for processing.   At Walgreens, a photo lab employee advised the store manager that the processed photos revealed images of naked children.  Pursuant to store policy, the local law enforcement authorities were notified.  Detective Monique Coleman-Robinson ("Detective Robinson") of the Shreveport Police Department ("SPD") responded to the call and obtained copies of the photos.  Detective Robinson observed that some of the photos contained images of an exposed female child's genitalia, and immediately conducted an interview with Mrs. Gaines and A.B. about the origin of the cellphone and the photographs.  Both women independently verified that the cellphone was that of the defendant.  Mrs. Gaines explained that she earned a living caring for young children ranging in age two to six years old at her in-home daycare.

After advising the defendant of his rights per *Miranda,* Detective Robinson initiated the interview.  Shortly, thereafter, the defendant admitted that the cell phone his wife found belonged to him, and he eventually admitted that it was his hand seen in the picture exposing a female child's genitalia.  Also, the defendant admitted that the other photos stored on the phone were taken by him as well.  He identified at least one of the victims in the photos as M.H. who attended his wife's daycare.  Upon notification, M.H.'s, parents took her to the Gingerbread House Children's Advocacy Center for a forensic interview.  Before the child's interview began, the mother of M.H. shared that her daughter had attended Mrs. Gaines' daycare full-time since the child was an infant but M.H.'s attendance was briefly

2

interrupted in August 2014 due to her loss of employment.  M.H. returned to the daycare in March 2015, and once the child started preschool in August, the child would only attend daycare from 3-6pm.  The parents also recalled a conversation with M.H. when she was two years old.  The child said that the defendant kissed her on the lips.  The parents thought the child mistakenly described the incident, and they thought she meant the defendant kissed her on the cheek.

On April 15, 2016, M.H. was interviewed at the Gingerbread House by Alex Person ("Person"), the director of education and a forensic interviewer.  Using an anatomical drawing, M.H. was able to identify different parts of the body and referred to her genitalia area as her "front butt," and her buttocks as her "back butt."  During the conversation, M.H. indicated she had been touched on her genitalia and buttocks and kissed on the lips by the defendant when she was three years old.  In the recorded interview M.H. said that the defendant "tries to kiss me! He tries to be real nasty and really tries to kiss me forreal! He thinks I'm grown. I'm just a child that lives in America."  In her infantile description, M.H. told how the defendant removed her clothing and his own clothing, how they lay in the bed unclothed, and further described how the defendant's "front butt" and "back butt" had hair on it.  M.H. also said Mrs. Gaines was away at the grocery store when these actions occurred.

Detective Robinson's investigation revealed additional victims. According to SPD records, a previous report was filed against the defendant for molestation of a juvenile on March 13, 2009, but no charges were ever filed.  In that report, the mother of C.E. stated that her four-year-old son told

3

her that the defendant licked his "tally wacker."[3] C.E.'s mother stated that the last time her son attended Mrs. Gaines' daycare was in January 2009. On June 18, 2009, the case was closed by SPD for lack of evidence.

On April 18, 2016, C.E. was interviewed at the Gingerbread House by Ms. Person. Using an anatomical drawing, C.E. was able to identify different parts of the body. C.E. stated he was between two and four years old when he would stay overnight at Mrs. Gaines' house and would sleep on the bottom bunkbed because the Gaineses' son K.J.[4] slept on the top bunkbed. C. E. stated that the incidents occurred when the defendant thought both he and K.J. were asleep. He stated while he pretended to be asleep the defendant would pull his pants and underwear down then the defendant would put his hands and mouth on his genitals.

On June 13, 2016, the 44-year-old defendant was charged by bill of information with one count of molestation of a juvenile under the age of 13, and one count of pornography involving a juvenile under the age of 13 of M.H., born May 4, 2011, with the alleged events occurring between January 1, 2013, and April 12, 2016; a second bill of information was filed against the defendant, charging him with one count of molestation of a juvenile under the age of 13 of C.E., born November 29, 2004, with the alleged events occurring between January 2006 and March 2009.

On August 17, 2018, A.B.[5] informed the police that she was molested by the defendant from the time she was 4 years old until she turned 13 years old. On September 25, 2018, a third bill of information was filed against the

---

[3] The term "tally wacker" is the word that C.E used to describe his genitals.
[4] K.J. is the defendant and Mrs. Gaines' son.
[5] A.B. is the former stepdaughter of the defendant, and Mrs. Gaines' daughter.

defendant charging him with one count of molestation of a juvenile under the age of 13 of A.B., born May 12, 1995, with the alleged events occurring between November 1, 1998, and December 31, 2008. On August 26, 2020, a fourth bill of information was filed for the purpose of consolidating the previous bills. A bench trial commenced March 5, 2021. The State called a total of 10 witnesses: the victims, the victims' parents, forensic interviewers, the Walgreens manager, Detective Robinson, and an expert in the cybercrimes unit.

**M.H.**

M.H. was the first victim to testify at trial, and she identified the defendant as her offender. The videotape of M.H.'s Gingerbread House interview was introduced as evidence and played for the court. During her testimony, M.H. confirmed that the content of her Gingerbread House interview was true. She further testified that the defendant tried to kiss her on the mouth and actually kissed her buttocks while at the Gaineses' home.

**C.E.**

C.E. was the second victim to testify at trial. Just as M.H. did, C.E. identified the defendant as the offender. The video recordings of both of C.E.'s Gingerbread House interviews were introduced as evidence and played for the court. During his testimony, C.E. confirmed that the contents of his Gingerbread House interviews were true. C.E. testified that he would occasionally stay overnight at the defendant's home and would sleep in the same room as K.J. on the bottom bunkbed. He further testified that the defendant licked his genitals and the molestation occurred multiple times.

**A.B.**

A.B. was the last victim to testify at trial and identified the defendant as the perpetrator. She also testified that she was either three or four years old when the defendant began to molest her, and the incident always occurred when she was left alone with the defendant. Additionally, A.B. testified that the defendant placed his genitals in her face and tried to make her perform oral sex on him. She further testified when she was in the fourth or fifth grade the defendant performed oral sex on her multiple times and forced her to watch pornography. A.B. testified that from age 11 to 13 years old, the defendant would take pictures of her naked and put his hands and mouth on her breasts. A.B. testified that she informed her mother about the molestation in 2018,[6] and that she did not tell anyone about the molestation sooner because the defendant threatened her. Lastly, A.B. testified that she helped her mother download the photos from the defendant's old cellphone and picked up the first set of the photos from Walgreens.

At the conclusion of the trial, the defendant was found guilty on all counts of the bill of information. On March 11, 2021, he was sentenced to 50 years of imprisonment at hard labor without the possibility of probation, parole, or suspension of sentence on each of the three counts of molestation of a juvenile and sentenced to 20 years of imprisonment at hard labor without the possibility of probation, parole, or suspension for the pornography count. Additionally, the court ordered the sentences to run consecutively with each other, and he was ordered to pay a fine of $10,000

---

[6] A.B. revealed her abuse to the police only after the defendant was jailed for the molestation of the other victims.

through inmate banking.  The court also denied the defendant's motion for post-judgment verdict of acquittal.  On March 22, 2021, the defendant filed a motion to reconsider sentence, and that motion was denied by the trial court as well. The court provided written reasons for the judgment on April 29, 2021.

Defendant now appeals his sentence as excessive.

## DISCUSSION

The defendant argues that the sentence of 170 years is an excessive sentence because the trial court failed to adequately consider mitigating factors including his work history, lack of a criminal history, and because the trial court failed to impose a concurrent sentence.

**La. C.Cr.P. art. 894.1**

An appellate court utilizes a two-pronged test in reviewing a sentence for excessiveness.  First, the record must show that the trial court took cognizance of the criteria set forth in La. C.Cr.P. art. 894.1.  The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article.  *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. West*, 53,526 (La. App. 2 Cir. 6/24/20), 297 So. 3d 1081; *State v. Sandifer*, 53,276 (La. App. 2 Cir. 1/15/20), 289 So. 3d 212; *State v. DeBerry*, 50,501 (La. App. 2 Cir. 4/13/16), 194 So. 3d 657, *writ denied*, 16-0959 (La. 5/1/17), 219 So. 3d 332. The articulation of the factual basis for a sentence is the goal of La. C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions.  Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C.Cr.P. art. 894.1.  *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v.*

*Lee*, 53,461 (La. App. 2 Cir. 4/22/20), 293 So. 3d 1270, *writ denied*, 20-00582 (La. 10/14/20), 302 So. 3d 1113; *State v. Payne*, 52,310 (La. App. 2 Cir. 1/16/19), 262 So. 3d 498; *State v. DeBerry*, *supra.* The trial court is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So. 2d 957, *cert. denied*, 519 U.S. 1043, 117 S. Ct. 615, 136 L. Ed. 2d 539 (1996); *State v. West*, *supra*; *State v. Valadez*, 52,162 (La. App. 2 Cir. 8/15/18), 251 So. 3d 1273; *State v. Jackson*, 51,575 (La. App. 2 Cir. 9/27/17), 244 So. 3d 764; *State v. Allen*, 49,642 (La. App. 2 Cir. 2/26/15), 162 So. 3d 519, *writ denied*, 15-0608 (La. 1/25/16), 184 So. 3d 1289. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense, and the likelihood of rehabilitation. *State v. Jones*, 398 So. 2d 1049 (La. 1981); *State v. DeBerry*, *supra*. The trial court is not required to assign any particular weight to any specific matters at sentencing. *State v. Parfait*, 52,857 (La. App. 2 Cir. 8/14/19), 278 So. 3d 455, *writ denied*, 19-01659 (La. 12/10/19), 285 So. 3d 489.

At the sentencing hearing, the trial court complied with La. C.Cr.P. art. 894.1. It reviewed the facts of the case, the defendant's own statement, the evidence submitted, and listened to victim impact statements made by A.B., C.E., and C.E.'s mother. The court determined that: (1) a lesser sentence would deprecate the seriousness of the defendant's crimes; (2) the defendant's conduct during the offenses manifested cruelty to the young victims; (3) the defendant knew the victims were extremely vulnerable children due to their ages; (4) the defendant used his position as a stepfather

8

and supervisor in his wife's daycare to force his will upon these children; and (5) the defendant used threats of violence toward A.B. that kept her from revealing the molestation she suffered as a child. The trial court also noted the defendant's lack of remorse during the proceeding. As to the first prong of the excessiveness test, this court finds that the trial court adequately complied with La. C.Cr.P. art. 894.1.

**Constitutional Excessiveness**

The defendant argues that the sentence is constitutionally excessive in that the consecutive sentences violate La. Const. art. I, § 20. The state contends that the defendant's consecutive sentences are appropriate because the crimes involved several victims and occurred over a significant period of time. Also, the state points out that the trial court imposed a midrange sentence of 50 years for each count of molestation of a juvenile rather than the maximum sentence of 99 years for each count as requested by C.E. and his mother.

The appellate court must determine if the sentence is constitutionally excessive. To assess a claim that a sentence violates La. Const. art. I, § 20, the appellate court must determine if the sentence is grossly disproportionate to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Dorthey*, 623 So. 2d 1276 (La. 1993); *State v. Bonanno*, 384 So. 2d 355 (La. 1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. West*, *supra; State v. Meadows*, 51,843 (La. App. 2 Cir. 1/10/18), 246 So. 3d 639, *writ denied*, 18-0259 (La. 10/29/18), 254 So. 3d 1208.

9

The sentencing court has wide discretion to impose a sentence within the statutory limits, and the sentence imposed will not be set aside as excessive absent a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Allen, supra.* On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7; *State v. Tubbs*, 52,417 (La. App. 2 Cir. 11/20/19), 285 So. 3d 536, *writ denied*, 20-00307 (La. 7/31/20), 300 So. 3d 404, *on recons.,* 20-00307 (La. 9/8/20), 301 So. 3d 30, and *writ denied,* 20-00307 (La. 9/8/20), 301 So. 3d 30.

**Sentences imposed for the crimes against M.H.**

At the time of the commission of the acts of molestation against M.H. (from January 1, 2013 to April 12, 2016),[7] La. R.S. 14:81.2(A)(1) and (D)(1) provided, in pertinent part:

> A. (1) Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious acts upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons……..

> D. (1) Whoever commits the crime of molestation of a juvenile when the victim is under the age of thirteen years shall be imprisoned at hard labor for **not less than twenty-five years nor more than ninety-nine years**. At least twenty-five years of the sentence imposed shall be served without benefit of probation, parole, or suspension of sentence.

The sentence for pornography involving juveniles under the age of 13 is contained in La. R.S. 14:81.1(E)(1)(a) and (5)(a), which provide:

---

[7] Although the amendment to the statute was effective from August 15, 2011, to the present day, we focus on the time period charged in the bill of information for M.H.

10

E. (1)(a) Whoever intentionally possesses pornography involving juveniles shall be fined not more than fifty thousand dollars and shall be imprisoned at hard labor for not less than five years or more than twenty years, without benefit of parole, probation, or suspension of sentence.

(5)(a) Whoever commits the crime of pornography involving juveniles punishable by the provisions of Paragraph (1), (2), or (3) of this Subsection when the victim is under the age of thirteen years and the offender is seventeen years of age or older shall be punished by imprisonment at hard labor for not less than one-half the longest term nor more than twice the longest term of imprisonment provided in Paragraph (1), (2), and (3) of this Subsection. The sentence imposed shall be served without benefit of parole, probation, or suspension of sentence.

The general rule regarding concurrent and consecutive sentences is set forth in La. C.Cr.P. art. 883, which provides:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.

Concurrent sentences arising out of a single course of conduct are not mandatory, and consecutive sentences under those circumstances are not necessarily excessive. It is within a trial court's discretion to order sentences to run consecutively rather than concurrently. When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence of record. *State v. Davis*, 52,453 (La. App. 2 Cir. 2/27/19), 265 So. 3d 1194; *State v. Williams*, 52,052 (La. App. 2 Cir. 6/27/18), 250 So. 3d 1200.

11

When consecutive sentences are imposed, the court shall state the factors considered and its reasons for the consecutive terms. Among the factors to be considered are: (1) the defendant's criminal history; (2) the gravity or dangerousness of the offense; (3) the viciousness of the crimes; (4) the harm done to the victims; (5) whether the defendant constitutes an unusual risk of danger to the public; and (6) the potential for the defendant's rehabilitation. The failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences. *State v. Sandifer*, *supra*. *See also State v. Williams*, *supra*.

The record shows an adequate factual basis for the sentences imposed for the molestation and pornography exposure of M.H., and the sentences are not constitutionally excessive. They are not out of proportion to the seriousness of the offenses and do not purposely and needlessly inflict pain and suffering. The sentences do not shock the sense of justice, and the factors articulated by the trial court provide justification for the court's decision to order that the sentences be served consecutively. The circumstances of this case are such that the trial court did not abuse its great discretion in imposing a consecutive sentence for the offenses against M.H.

The court considers the defendant's conduct against all of his victims to be particularly reprehensible. The resulting significant and deleterious effect on M.H., C.E. and A.B., their families (including his own), demand that we affirm his convictions.

## ERROR PATENT REVIEW

Our review of the record has disclosed several errors patent discoverable on the face of the record and which require remand.

12

*Illegal Sentence*

**Sentences imposed for the crimes against C.E. and A.B.**

The sentences imposed for defendant's convictions for the molestation of C.E. and A.B. are illegal. The record reflects that the court sentenced the defendant to 50 years each for C.E. and A.B.

The bill of information alleged that the defendant's molestation of C.E. occurred from January 2006 to March 2009. During that entire time period, the sentencing range for La. R.S. 14:81.2(D)(1) was 5 to 40 years at hard labor. The maximum sentence the defendant could have received under the statute was 40 years. Therefore, the sentence of 50 years was illegal.

Regarding A.B., the bill of information alleged that the molestation occurred from November 1, 1998, to December 31, 2008. During this time period, the sentencing range was amended. From 1998 to 2006, the sentencing range was 5 to 15 years at hard labor. From 2006 to 2008, the sentencing range was 5 to 40 years at hard labor. In *State v. Roth*, 52,359 (La. App. 2 Cir. 11/14/18), 260 So. 3d 1230, *writ denied,* 18-2059 (La. 6/17/19), 273 So. 3d 1210, we held that when presented with this scenario, the trial court may sentence the defendant pursuant to the harsher version of the statute as long as the evidence is sufficient to support a conviction for an act committed during the time that the harsher version was in effect. Accordingly, the maximum sentence the defendant could have received for the molestation of A.B. was 40 years. Therefore, the sentence of 50 years was illegal

The sentences imposed for the defendant's convictions for the molestation of C.E. and A.B. are vacated and remanded for resentencing.

*Sex Offender Notification*

A review of the record reveals that the trial court did not properly inform the defendant of the sex offender notification requirements outlined in La. R.S. 15:543. At all relevant times, molestation of a juvenile has been defined as a sex offense by La. R.S. 15:541. La. R.S. 15:542 provides registration requirements for sex offenders. Additionally, La. R.S. 15:543 requires that the trial court notify a defendant charged with a sex offense in writing of the registration requirements. There being no indication in the record as to whether the defendant is aware of the sex offender registration requirements, we remand this case to the trial court for the purpose of providing him the appropriate written notice of the sex offender registration requirement. *State v. Dale*, 50,195 (La. App. 2 Cir. 11/18/15), 180 So. 3d 528; *State v. Williams*, 49,249 (La. App. 2 Cir. 10/1/14), 149 So. 3d 462, *writ denied,* 14-2130 (La. 5/22/15), 173 So. 3d 1167; *State v. Scott*, 42,997 (La. App. 2 Cir. 2/13/08), 975 So. 2d 782.

## CONCLUSION

For the foregoing reasons, we affirm the defendant's convictions. The sentences imposed for the offenses committed against M.H. are affirmed. The remaining sentences imposed for the molestation of C.E. and A.B. are vacated. The case is remanded to the trial court for resentencing in accordance with this opinion.

**CONVICTIONS AFFIRMED; SENTENCES AFFIRMED IN PART; SENTENCES VACATED IN PART; AND REMANDED FOR RESENTENCING WITH INSTRUCTIONS.**