GARRETT, J.
After a bench trial, the defendant, Steven Minor, was convicted of attempted second degree murder and sentenced to 20 years at hard labor without benefit of parole, probation, or suspension of sentence. The defendant appealed, arguing that the evidence was insufficient to support his conviction and that his sentence was excessive. We affirm the defendant's conviction and sentence.
*1280 FACTS
On April 22, 2016, the City of Bastrop police were dispatched to Austin Street in reference to a shooting. When police arrived, they found the victim, Rolandus Vaughn, under the carport of a home. He had suffered gunshot wounds to his hip, stomach and wrist. The victim was transported to the hospital by helicopter. Fortunately, he recovered from his injuries, but the bullet in his hip apparently could not be removed.
Based upon eyewitness accounts, police developed the 18-year-old defendant as the shooter. The eyewitnesses saw the two men argue and the defendant draw a gun before firing shots at the victim. The defendant admitted shooting the victim, but insisted that he only wanted to scare him and did not intend to hurt or kill him. The defendant was arrested and charged with attempted second degree murder.
After the defendant waived his right to a jury trial, a bench trial was held in June 2017. After considering the evidence and testimony, the trial court found the defendant guilty as charged of attempted second degree murder. In August 2017, the trial judge sentenced the defendant to 20 years at hard labor without benefit of parole, probation, or suspension of sentence.[1] A timely motion to reconsider, which only requested the imposition of a sentence of no more than 10 years at hard labor, was summarily denied by the trial court. The defendant appealed.
SUFFICIENCY OF EVIDENCE
The defendant contends that the evidence was insufficient to convict him because the state failed to prove that he had the requisite specific intent to kill necessary to support the verdict of attempted second degree murder. He argues that he should have been convicted of only aggravated battery.
The state argues that the evidence, when viewed in the light most favorable to the state, was clearly sufficient to satisfy any rational trier of fact that the defendant possessed the specific intent to kill the victim and to support the verdict of attempted second degree murder. The state asserts that the victim's testimony that the defendant pointed a gun at his head and then shot him several times was alone sufficient to establish the crime. Further, the eyewitness accounts corroborated that the defendant approached the victim, argued with him, pulled out a gun, and shot the unarmed man. The state contends that this evidence is sufficient to establish that the defendant faced the victim when he first shot him and then continued to shoot at him after the victim turned to run away. The state points out that further evidence showed that the defendant admitted to arming himself after an incident with the victim the night before the shooting and to waiting at a stop sign with the gun the following morning until he saw the victim approach. This evidence, according to the state, was sufficient to support the verdict.
Law
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found *1281 the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed. 2d 560 (1979) ; State v. Tate , 01-1658 (La. 5/20/03), 851 So. 2d 921, cert. denied , 541 U.S. 905, 124 S. Ct. 1604, 158 L.Ed. 2d 248 (2004) ; State v. Robinson , 50,643 (La. App. 2 Cir. 6/22/16), 197 So. 3d 717, writ denied , 16-1479 (La. 5/19/17), 221 So. 3d 78. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. State v. Pigford , 05-0477 (La. 2/22/06), 922 So. 2d 517 ; State v. Robinson , supra . The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So. 2d 442. A reviewing court accords great deference to the factfinder's decision to accept or reject the testimony of a witness in whole or in part. State v. Robinson , supra ; State v. Moss , 48,289 (La. App. 2 Cir. 11/20/13), 127 So. 3d 979, writ denied , 13-2975 (La. 8/25/14), 147 So. 3d 697.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Robinson , supra ; State v. Randle , 49,952 (La. App. 2 Cir. 6/24/15), 166 So.3d 465.
To sustain a conviction for attempted second degree murder, the state must prove that the defendant: (1) intended to kill the victim; and (2) committed an overt act tending toward the accomplishment of the victim's death. La. R.S. 14:27 ; 14:30.1. Although the statute for the completed crime of second degree murder allows for a conviction based on "specific intent to kill or to inflict great bodily harm," La. R.S. 14:30.1, attempted second degree murder requires specific intent to kill. State v. Bishop , 01-2548 (La. 1/14/03), 835 So.2d 434. Proof of specific intent to inflict great bodily harm is insufficient for a conviction for attempted second degree murder. State v. Lewis , 51,672 (La. App. 2 Cir. 11/15/17), 245 So.3d 233 ; State v. Patterson , 50,305 (La. App. 2 Cir. 11/18/15), 184 So.3d 739, writ denied , 15-2333 (La. 3/24/16), 190 So.3d 1190.
Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Such state of mind can be formed in an instant. State v. Murray , 49,418 (La. App. 2 Cir. 1/14/15), 161 So.3d 918, writ denied , 15-0379 (La. 4/8/16), 191 So.3d 582. Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. State v. Bishop , supra . Specific intent to kill may also be inferred from the extent and severity of the victim's injuries, and the defendant's use of a deadly weapon to produce those injuries, which involved serious risk of death. State v. Washington , 50,424 (La. App. 2 Cir. 3/16/16), 188 So.3d 350, writ denied , 16-0718 (La. 4/13/17), 218 So.3d 119. The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill. State v. Patterson , supra . The determination of whether the requisite intent is present is a question for the trier of fact. State v. Lewis , supra ; State v. Patterson , supra .
Trial Testimony
At trial, testimony was given by the defendant and the victim, as well as several Austin Street residents who witnessed the shooting. Although all of the witnesses agreed that the defendant shot the victim, the details varied in several respects.
The victim testified that the defendant's cousin stole a television from his friend, Mike Lyons. The victim identified the thief *1282 to Mike, and a verbal confrontation ensued between the cousin, the defendant, and Mike on the night before the shooting. The victim indicated that he was present at the altercation but did not participate in it. At about 9 o'clock the next morning, as he walked on Austin Street, the victim was approached by the defendant, who wanted him to walk down a nearby secluded trail. The victim told the defendant to go on and get out of his face. The defendant pulled a gun on the unarmed victim, aiming it at his head. The victim testified that he raised his hands and told the defendant to put down the gun and "get on down the road." The defendant lowered the gun and shot the victim first in the left hip and then in the right side of his abdomen. The victim testified that he turned to run and that the defendant shot at him a third time, striking him in his right wrist. The victim then fled down the street to a house, where he collapsed in the carport. He testified that the defendant turned and walked off.
Larry Nix, an Austin Street resident, said that the victim had been sitting with him in his carport before the shooting. The victim walked in one direction to go home and Mr. Nix walked in the other to head to the grocery store. He walked past the defendant. He stopped when he heard the victim and the defendant arguing; the victim told the defendant to go on down the road. The defendant then produced a gun and pointed it at the victim's body. Mr. Nix heard three gunshots. The second shot was fired after the unarmed victim ran. After the third shot, the victim hollered and fell down. The defendant ran past Mr. Nix and got in a gray car, which he believed was a Marquis. Mr. Nix went to help the victim, who has been shot at least twice.
Another neighbor, Jerome White, was walking his dog when he saw the defendant walking "up and down the road." When the victim walked out of Mr. Nix's driveway, Mr. White saw the defendant approach the victim. According to Mr. White, the defendant pulled out a gun and told the unarmed victim to get down the road. The defendant first pointed the gun at the victim's head; the victim told him to go on about his business while dodging side to side. The defendant dropped the gun to waist level and fired two times. The victim was facing the defendant for the first shot but not the second one. After the shooting, Mr. White saw the defendant run down the street and get in a gray Crown Victoria. Mr. White checked on the victim, who was in a carport, and had someone call the police and an ambulance.
Lisa Lyons testified that the victim was a friend of her son, Mike. She was in her yard when she heard the men arguing. She heard the victim saying, "Go on, man." She called out to the victim to ask if she should call the police. She then went inside and called. As she was coming back outside, she heard one gunshot.
The defendant testified on his own behalf. He admitted that he pointed the gun at the victim and fired two rounds, both of which struck the victim. However, he asserted that he did not intend to hurt or kill the victim, that he only wanted to scare him, and that "multiple altercations" had led up to the shooting. He described an incident the night before the shooting when he and his cousin participated in a fight. While the victim was present at that event, he was not involved in the fight. However, the defendant testified that, had he had his gun that night, he "probably" would have shot the victim then because he was present and encouraging the people with whom the defendant was fighting.
The defendant testified that, after the fight, he went to his grandmother's house on Austin Street where he kept his gun. When he left the house the next morning, he had the gun with him. (He testified that *1283 it never crossed his mind that he was a convicted felon with a firearm.) The defendant said he went outside at 7 a.m. and stood by a stop sign, something he said he did every day. He also said he was waiting to be picked up. The defendant testified that he and the victim walked up to each other and had a "minor" argument that got "intense." The victim asked if he had learned his lesson the night before. The defendant asked him, "Why y'all did that?" The victim told him to stop stealing. After the defendant denied stealing, the victim told him that if he stole, it would happen again. The defendant testified that the victim then "provoked" him to pull out his gun by walking up to him with his hands in his pants. At that point, the defendant said he felt like the victim was "gonna try to do somethin' to me," so he pulled out his gun and began shooting and running. He admitting firing the weapon twice but denied shooting a third time. He also made a distinction between "pointing" and "aiming" the gun, insisting that he merely "pointed" it in the general direction of the victim and "shot a couple of shots," without knowing where they would land. His definition of "aiming" the gun involved walking up to a person, holding the gun with two hands, aiming directly at the person, and trying to hit him.
Additionally, the defendant accused the other witnesses of lying in their testimony. In particular, he said they lied about him approaching the victim and calling out to him and the victim holding up his hands and telling the defendant to go on.
Discussion
Upon review of the evidence in the light most favorable to the state, we find that the state's proof is sufficient to support the verdict of attempted second degree murder. The defendant admitted that he shot the victim, but disputed that he had the specific intent to kill him. As observed by the trial court, the evidence belies the defendant's assertions. The trial court accepted the testimony of the victim and Mr. White that the defendant first pointed the gun at the victim's head before dropping it and then shooting the unarmed victim three times, and clearly rejected the defendant's claim that he shot at the victim to scare him as self-serving. The trial court was also unconvinced by the defendant's assertion that he "just shot without aiming." These credibility determinations are reasonably supported by the record. Certainly the defendant's act of pointing the gun at the victim's head, followed by his actual shooting of the unarmed victim at least two times as he ran away, reasonably supports the inference that the defendant intended to kill the victim, rather than to scare him. The fact that defendant was able to shoot the victim more than once also supports the conclusion that he was firing more than warning shots. Most telling, however, was the defendant's admission that he would have shot the victim the night before if he had had a gun. This fact, when coupled with his subsequent arming of himself the following morning and waiting on the street until the victim appeared, buttresses the conclusion that he actively desired to kill the victim. These facts are sufficient to support the trial court's verdict.
This assignment of error is without merit.
EXCESSIVE SENTENCE
The defendant argues that the sentence of 20 years without benefits was constitutionally excessive, given the trial court's observation that the facts presented a "close question," his young age, and his minimal criminal record.
The state contends that the sentence imposed was directly proportionate to the crime, and was less than half of what could have been imposed for this senseless *1284 crime. The state points out that, prior to imposing sentence, the trial court duly considered all relevant factors, which included the defendant's youth, the victim's attitude, the fact that things did not turn out as badly as they could have, and the defendant's prior gun involvement.
Law
Where a defendant's motion to reconsider sentence alleges mere excessiveness of sentence, on appeal the reviewing court is limited to considering whether the sentence is constitutionally excessive. State v. Mims , 619 So.2d 1059 (La. 1993) ; State v. Mizell , 50,222 (La. App. 2 Cir. 11/18/15), 182 So.3d 1082.
A sentence violates La. Const. Art. I § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than the purposeless infliction of pain and suffering. State v. Smith , 01-2574 (La. 1/14/03), 839 So. 2d 1 ; State v. Dorthey , 623 So. 2d 1276 (La. 1993) ; State v. Lapoole , 51,199 (La. App. 2 Cir. 2/15/17), 215 So. 3d 430, writ denied , 17-0618 (La. 11/28/17), 230 So. 3d 220. A sentence is grossly disproportionate if, when the crime and punishment are viewed in light of the harm to society, it shocks the sense of justice or makes no reasonable contribution to acceptable penal goals. State v. Weaver , 01-0467 (La. 1/15/02), 805 So. 2d 166 ; State v. Lapoole , supra .
The trial court is given wide discretion in the imposition of sentences within the statutory limits, and the sentence imposed will not be set aside as excessive in the absence of a manifest abuse of that discretion. State v. Williams , 03-3514 (La. 12/13/04), 893 So.2d 7 ; State v. Washington , 49,236 (La. App. 2 Cir. 8/13/14), 147 So.3d 784. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Williams , supra ; State v. Lapoole , supra .
An attempted second degree murder conviction carries a sentencing exposure of not less than 10 years, nor more than 50 years, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:27(D)(1)(a) ; La. R.S. 14:30.1 ; State v. Christopher , 50,943 (La. App. 2 Cir. 11/16/16), 209 So. 3d 255, writ denied , 16-2187 (La. 9/6/17), 224 So. 3d 985.
Discussion
In the instant case, the defendant's motion to reconsider sentence asserted only a request for the trial court to impose a lesser sentence. This effectively raises only an argument that the imposed sentence was excessive.
When the defendant appeared for sentencing, his counsel argued that the case fit the facts of an aggravated battery and requested the imposition of a 10-year sentence. Prior to sentencing, the trial court observed that this case presented a "close question" as to specific intent. It also stated that it was considering a presentence investigation report, which included the victim's request for restitution for helicopter medical transport and hospital bills, which totaled about $47,000. The trial court found as a particular concern the fact that this event occurred in a "residential neighborhood," with "people trying to go about their normal lives and having to suffer the indignity of having somebody shoot somebody down on their street." The trial court noted the defendant's age at the time of the crime and the fact that his criminal record included a charge for principal to armed robbery, where he threw a gun out of a window. The court considered that the defendant was convicted of "an offense involving a gun," and then shot the victim in the instant case less than a year later. The trial court noted that the defendant also had pending charges for illegal possession of a firearm from April 15, 2015. It concluded that the "common denominator *1285 in everything for which he's committed to paper is a gun and he finally used it." Consideration was given for the fact that the defendant was "currently on probation or awaiting probation revocation for an offense involving a gun," and the court noted that it was "leaning toward a more severe sentence because of this gun...business." For these reasons, the trial court stated that "[o]n paper he looks like a dangerous person." The trial court also considered that the victim had been shot three times, as well as the fact that this was the third time the defendant "has been brought before the system for using a gun or having a gun-involved crime." Ultimately, due in large measure to his prior gun involvements, the trial court sentenced the defendant to 20 years at hard labor without benefits.
We find that the imposed sentence is not constitutionally disproportionate to the nature of the offense or the offender. Despite the defendant's young age, he shot an unarmed man several times while the man was retreating, causing serious injury and trauma to the victim. Notwithstanding the defendant's arguments to the contrary, these facts fit the crime of attempted second degree murder. The defendant's motivation for shooting the victim concerned a previous altercation which did not involve the victim, but whose presence at the scene nevertheless angered the defendant to such an extent that he armed himself the following morning and apparently waited to approach the victim. At the time he committed this offense, the defendant was on probation for a previous felony conviction that involved disposing of a gun used by someone else in an armed robbery, and he had charges pending against him for illegal possession of a stolen firearm. Thus, he was a second-felony offender. These circumstances show that the defendant has failed to benefit from prior leniency in sentencing and has exhibited a continuing disregard for gun laws. While the defendant's prior offenses involved gun possession, the present offense escalated to the discharge of a weapon against an unarmed individual.
Considering the facts of this matter, the chosen penalty is not shocking to the sense of justice or a purposeless imposition of pain and suffering. This assignment of error is meritless.
CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.

In October 2016, the state filed a motion to invoke the firearm sentencing provisions, pursuant to La. C. Cr. P. art. 893.1 et seq. At the conclusion of the trial, the trial judge held that the state had proven the facts necessary to invoke the firearm sentencing provisions. At sentencing, the trial court ruled that, since it imposed a sentence in excess of the mandatory minimum set forth in La. C. Cr. P. art. 893.3, it was unnecessary to make any more specific ruling, and no further action was taken on it. Neither party objected or raised the matter on appeal.