GARRETT, J.
The defendant, Larry Lewis, Jr., was convicted of four counts of molestation of a juvenile and was sentenced to serve 20 years at hard labor on each count, to be served concurrently. He appealed his convictions and sentences. For the following reasons, we affirm.
FACTS
The victim in this matter is AA.[1] AA's mother is legally blind and managed a trailer park. She employed Lewis to work at her business, to help with matters around the house, and to drive for her and AA. Lewis and AA's mother had a sporadic intimate relationship. The victim's mother invited Lewis to live in her home in order to make it easier for him to drive her and AA to work and school.
Lewis began molesting AA on November 22, 2012, and continued until December 10, 2012. Lewis and AA would watch television in the living room, in the dark, under a blanket. On November 22, 2012, while watching a scary movie, Lewis began touching AA, and then engaged in sexual intercourse with her. Over the next couple of weeks, three more instances of molestation occurred, all on the couch in the dark living room. AA's date of birth is December 3, 1998. She was 13 years old during the first two offenses and 14 during the second two offenses. Lewis's date of birth is February 11, 1977. He was 35 years old when the offenses were committed.
In December 2012, a school friend, Morgan Thompson, noticed a hickey on AA's neck. AA told Thompson that Lewis had given her the hickey. Thompson reported this information to school authorities. Law enforcement officials were contacted and *1223 an investigation was commenced. AA told investigators with the Union Parish Sheriff's office that she had sexual contact with Lewis on four occasions. Lewis was arrested, and on August 15, 2014, he was charged by bill of information with four counts of molestation of a juvenile, violations of La. R.S. 14:81.2.[2] He was tried by a jury in February 2018, and was found guilty as charged on all four counts. On May 15, 2018, the trial court sentenced Lewis to serve 20 years at hard labor on each count, with the sentences to be served concurrently. In open court, Lewis signed an acknowledgment of receipt of the sex offender registration and notification requirements. No motion to reconsider the sentence was filed. Lewis appealed his convictions and sentences.[3]
JURY INSTRUCTION
Lewis argues that the trial court erred in failing to define for the jury the element in the molestation statute of "a position of control or supervision over the juvenile." This argument is without merit.
Legal Principles
A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. The nature of the objection and grounds therefor shall be stated at the time of objection. The court shall give the party an opportunity to make the objection out of the presence of the jury. La. C. Cr. P. art. 801(C). See State v. Washington , 51,818 (La. App. 2 Cir. 4/11/18), 245 So.3d 1234 ; State v. Barron , 51,491 (La. App. 2 Cir. 8/9/17), 243 So.3d 1178, writ denied , 17-1529 (La. 6/1/18), 243 So.3d 1063.
The rule requiring contemporaneous objection serves two purposes: it prevents a defendant from withholding objections to errors which might have been corrected at trial, with the intention of resorting to such errors on appeal; and it promotes judicial efficiency. State v. Matthews , 50,838 (La. App. 2 Cir. 8/10/16), 200 So.3d 895, writ denied , 16-1678 (La. 6/5/17), 220 So.3d 752.
Discussion
Lewis argues that the jury was not properly instructed as to the meaning of the element in the offense of molestation of a juvenile requiring proof that the offense was committed by the use of influence by virtue of a position of control or supervision over the juvenile. The charge read to the jury included the definition and elements of molestation of a juvenile and indecent behavior with a juvenile. The jury verdict form listed the possible verdicts as: (1) guilty of molestation of a *1224 juvenile with control or supervision; (2) guilty of molestation of a juvenile without control or supervision; (3) guilty of attempted molestation of a juvenile; (4) guilty of indecent behavior with a juvenile; (5) guilty of attempted indecent behavior with a juvenile; (6) not guilty. During the course of the deliberations, the jury requested that the court explain the difference between molestation of a juvenile with control and supervision and indecent behavior with a juvenile. The trial court again read the definition of "molestation of a juvenile with control or supervision." The jury was asked if that answered the question. The jury foreman said, "Yes." The trial court then read the definition of indecent behavior with a juvenile. The jury was again asked if that answered the question. The foreman replied that it did. The jury then returned to its deliberations.
No objection was made to the instructions read to the jury before deliberations or in response to the jury's question. There was no indication that the jury was confused by the instructions. Due to the failure to make a contemporaneous objection to the instructions given, Lewis is not entitled to raise this issue on appeal. However, the record shows that the jury instructions given were sufficient and correct.
SUFFICIENCY OF THE EVIDENCE
Lewis asserts that the state failed to prove beyond a reasonable doubt that he exercised supervision or control over AA, and therefore, he should only have been convicted of a lesser grade of molestation or of indecent behavior with a juvenile. This argument is without merit.
Legal Principles
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Tate , 01-1658 (La. 5/20/03), 851 So.2d 921, cert. denied , 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004) ; State v. Robinson , 50,643 (La. App. 2 Cir. 6/22/16), 197 So.3d 717, writ denied , 16-1479 (La. 5/19/17), 221 So.3d 78 ; State v. Minor , 52,091 (La. App. 2 Cir. 9/26/18), 254 So.3d 1278, 2018 WL 4610809.
This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the factfinder. State v. Pigford , 05-0477 (La. 2/22/06), 922 So.2d 517 ; State v. Robinson , supra ; State v. Minor , supra . The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to the factfinder's decision to accept or reject the testimony of a witness in whole or in part. State v. Robinson , supra ; State v. Moss , 48,289 (La. App. 2 Cir. 11/20/13), 127 So.3d 979, writ denied , 13-2975 (La. 8/25/14), 147 So.3d 697 ; State v. Minor , supra .
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. Such testimony alone is sufficient even where the state does not introduce medical, scientific or physical evidence to prove the commission of the offense by defendant. State v. Terry , 47,425 (La. App. 2 Cir. 11/21/12), 108 So.3d 126, writ denied , 12-2759 (La. 6/28/13), 118 So.3d 1096.
The pertinent portions of La. R.S. 14:81.2, defining the offense of molestation of a juvenile applicable to this case, are set forth above. The essential elements of the crime of molestation of a juvenile, each of *1225 which the prosecution must prove beyond a reasonable doubt, are: (1) the accused was over the age of 17; (2) the accused committed a lewd or lascivious act upon the person or in the presence of a child under the age of 17; (3) the accused was more than two years older than the victim; (4) the accused had the specific intent to arouse or gratify either the child's sexual desires or his or her own sexual desires; and (5) the accused committed the lewd or lascivious act by use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm or by the use of influence by virtue of a position of control or supervision over the juvenile. La. R.S. 14:81.2 ; State v. LeBlanc, 506 So.2d 1197 (La. 1987) ; State v. Wilson , 50,418 (La. App. 2 Cir. 4/6/16), 189 So.3d 513, writ denied , 16-0793 (La. 4/13/17), 218 So.3d 629 ; State v. Terry , supra .
The harsher penalty provision for molestation of a juvenile where the offender has control or supervision over a juvenile exists because an offender who has control or supervision over a juvenile is in a position of trust. State v. Dale , 50,195 (La. App. 2 Cir. 11/18/15), 180 So.3d 528, writ denied , 15-2291 (La. 4/4/16), 190 So.3d 1203. The meaning of the phrase, "influence by virtue of a position of control or supervision," in La. R.S. 14:81.2 is "not restricted in its application to persons to whom the parent entrusts the child for care, usually for a fee, such as babysitters, child care workers or teachers." State v. Shelton , 545 So.2d 1285 (La. App. 2 Cir. 1989), writ denied , 552 So.2d 377 (La. 1989) ; State v. Onstead, 03-1413 (La. App. 5 Cir. 5/26/04), 875 So.2d 908 ; State v. Dale , supra . Rather, the statute permits finding evidence of supervision or control by noncustodial parents, relatives, friends and neighbors of young victims. State v. Dale , supra . Living in the home with the victim, acting as a father-figure to the victim, and exercising emotional control over the victim have been found to be sufficient to support a finding of supervision or control. See State v. Roy , 2015-515 (La. App. 3 Cir. 11/4/15), 177 So.3d 1103.
Louisiana courts consider the following factors when making a determination as to whether a defendant used influence by virtue of his position of supervision or control over the victim: (1) the amount of time the defendant spent alone with the victim; (2) the nature of the relationship between the victim and the defendant; (3) the defendant's age; and (4) the defendant's authority to discipline. State v. Dale , supra , citing Burton v. Cain , No. CIV.A. 11-1781, 2012 WL 5966532 (E.D. La. Aug. 21, 2012), report and recommendation approved , No. CIV.A. 11-1781, 2012 WL 5960197 (E.D. La. Nov. 28, 2012) ; State v. Pittman , 51,602 (La. App. 2 Cir. 4/11/18), 244 So.3d 830.
Discussion
The victim's mother testified that she has had vision problems since 2000, and stopped driving that year. She moved into the dwelling where these offenses occurred in 2007. Lewis was a friend who drove for her and worked for her. They had sexual relations on several occasions, but were not involved in a relationship. Lewis moved into the residence in July or August 2012, because it was easier for him to drive AA and her mother to school and work if he was already at the house in the mornings. Lewis drove the victim's mother to work and dropped AA off at school. He picked AA up at school in the afternoons and would either take her to her mother's work or would take her home and stay with her until the victim's mother was driven home by her father, AA's grandfather.
According to the victim's mother, Lewis disciplined AA, would get onto her about her clothing, once told AA that her pants *1226 were too tight, and told AA where she could and could not go. Lewis directed AA to do her chores and woke the child up in the morning most of the time.
The victim's mother said that she has no vision at night and Lewis moved the only DVD player in the house from the den into the living room. The living room had no lights and had a smaller television. According to the witness, this made it easier for Lewis to lure AA into the living room without attracting attention. Further, the victim's mother would not be able to see what was happening in the room.
The victim's mother testified that AA formed an emotional attachment to Lewis and stole prescription drugs from her grandfather at Lewis's behest. The victim's mother said she heard AA and Lewis planning a hunting trip so they could be alone together.
AA testified that her mother has no night vision, only limited central vision, and is color blind. When these offenses occurred in 2012, AA was in the seventh grade. AA said that Lewis was hired to drive for her and her mother. Lewis picked AA up from school and either drove her home or to her mother's work. Lewis eventually moved in with them. AA said that Lewis disciplined her. Lewis made sure that AA did her chores and told her what she could wear and where she could go. AA said she did not feel like she could disobey Lewis. According to AA, Lewis took on some of the parental responsibilities for her.
Around the start of the school year, AA said Lewis pulled her aside and told her that, if she was going to have a relationship with any boys at school, she should come to him for advice and protection. AA thought this was unusual.
AA said that the living room was more secluded than the den and she thought it was unusual when Lewis moved the DVD player to the living room. On the evening of the first offense, AA and Lewis were watching a scary movie. AA testified that Lewis told her to come lie on the couch with him so he could "comfort" her. It was around midnight and her mother was asleep in her room. Both AA and Lewis were wearing pajamas. AA said that Lewis put his hand under her shirt and then took her pants off. He took his pants off also, and, according to AA, "He had sex with me." Forensic questioning of AA showed that this was, in fact, vaginal intercourse. AA said that Lewis's head was facing toward her mother's room so he could hear if she got up. AA was 13 when this offense occurred.
The second time Lewis had intercourse with AA, she was still 13 and he followed the same procedure. The third offense occurred after AA turned 14. Lewis and AA performed oral sex on each other. The fourth offense involved sexual intercourse. In connection with all four offenses, Lewis gave AA beer to drink. There were also indications that AA was given Lortab, which Lewis had directed her to steal from her grandfather. AA said that the offenses occurred in the living room between midnight and four in the morning.
On one occasion, a neighbor and family friend, Raymond Johnson, came to the house and walked in the back door unannounced, as was his custom. AA and Lewis were on the couch covered up with a blanket. AA said they were not having sex at that time. Lewis became angry at Johnson for entering the house without knocking. Johnson told the victim's mother about the incident the next day.
At some point, AA told Lewis that she was going to tell a friend about what had been happening and he became angry. AA did tell friends at school about her activities with Lewis. Another friend, Morgan Thompson, inquired about a hickey on AA's neck and she told Thompson that *1227 Lewis had given her the hickey. When sheriff's deputies came to the house to investigate, Lewis became angry and told AA not to talk to them. The deputies eventually asked Lewis to leave the house. When the investigation began, AA had been suspended from school when she was discovered to be in possession of the drugs stolen from her grandfather.
Thompson testified that, in 2012, she attended school with AA. One day, AA took a scarf off her neck in the bathroom, revealing a hickey. Thompson asked where it came from and AA told her that Lewis did it. Thompson knew that Lewis was a caretaker for AA and her mother. Thompson went to the school counselor with the information and the counselor alerted the principal.
Darien Brown, a deputy with the Union Parish Sheriff's office, investigated these offenses. On the evening of December 12, 2012, they received information about the offenses and went to the home of AA's mother. AA, her mother and Lewis were at the house. The deputy photographed the hickey on AA's neck. Lewis was belligerent and was asked to go to another room in the house. He would not stay in the room and was asked to leave the residence.
The next day, AA was taken to Pine Hills Advocacy Center in Ruston for a forensic interview. The interview was conducted by Joanie Huffman, a Lincoln Parish Sheriff's deputy trained in forensic interviews of children. A video of the interview was played for the jury. The information given by AA during the interview was consistent with her testimony given in court. AA said she told two friends about her activities with Lewis.
A recording of an interview with Thompson made at the time of the investigation was also played for the jury. Thompson said that friends told her that AA had been having sex with Lewis, and Thompson asked AA about the hickey she observed on AA's neck. Thompson said she understood that Lewis was the caretaker and driver for AA and her mother due to the mother's limited vision.
Lewis cites several cases to argue that there was insufficient evidence of supervision or control in this case to support his conviction of molestation of a juvenile. The cases cited by Lewis are distinguishable from the facts presented here and do not support his argument.
In State v. Graham , 2014-1801 (La. 10/14/15), 180 So.3d 271, the defendant was charged with aggravated incest. The victim was thought to be the defendant's step-sibling. During the trial, it became apparent that the defendant and the victim were not step-siblings at the time of the alleged offense because their parents were not yet married. The trial court erroneously permitted the state to add molestation of a juvenile as a responsive verdict and the jury convicted the defendant of that offense. The Louisiana Supreme Court found that molestation of a juvenile was not a responsive verdict to incest, and there was no evidence that the defendant ever exercised supervision or control of the victim. Therefore, the elements of molestation of a juvenile were not proved. The conviction was reversed.
In State v. Forbes , 97-1839 (La. App. 1 Cir. 6/29/98), 716 So.2d 424, the defendant was a visitor in the home of the victim's grandmother. He was convicted of attempted molestation of a juvenile with control or supervision of the juvenile. However, there was no showing that the defendant ever exercised any control or supervision over the juvenile. On appeal, the conviction was modified to attempted indecent behavior with a juvenile.
In State v. Ragas , 607 So.2d 967 (La. App. 4 Cir. 1992), writ denied , 612 So.2d 97 (La. 1993), the defendant was convicted of two counts of attempted molestation of a *1228 juvenile. The first conviction was reversed because there was no showing of a lewd or lascivious act. The second count was modified to attempted indecent behavior with a juvenile because there was no showing that the defendant exercised supervision or control over the victim. The defendant was the victim's uncle, the victim did not live in his house, the defendant was not keeping the victim on the day of the offense, the victim was not subject to the uncle's supervision and was not under any constraints to stay at his house.
In this case, the record is replete with evidence that Lewis exercised supervision and control over AA. Both AA and her mother testified to the actions taken by Lewis which showed that he did exercise supervision and control over AA. He woke AA up most mornings, instructed her to do her chores, told her what to wear, and told her where she could and could not go. Lewis drove AA home from school many evenings and stayed there with her until the victim's mother arrived. The victim's mother testified that Lewis disciplined AA. Further, Lewis instructed AA to steal drugs from her grandfather and she complied. We also note that the offenses began when Lewis instructed AA to lie on the couch with him so he could comfort her during a scary movie and the child complied with his instructions. These factors show that Lewis was a father-figure to AA. Due to the amount of time Lewis spent alone with the victim, Lewis's relationship with AA of being a father-figure, Lewis's age of 35, making him old enough to be the victim's father, and his authority to discipline AA, the state provided ample evidence of Lewis's supervision and control over AA.
EXCESSIVE SENTENCE
Lewis argues that his maximum sentences of 20 years at hard labor are excessive for a 41-year-old first felony offender. This argument is without merit.
Legal Principles
In this matter, no motion to reconsider the sentences was filed. Ordinarily, appellate review of sentences for excessiveness is a two-step process, the first being an analysis of the district court's compliance with the sentencing guidelines of La. C. Cr. P. art. 894.1. However, when a defendant fails to file a motion to reconsider sentence in the lower court, appellate review is limited to the second step, an analysis of the sentence for constitutional excessiveness. State v. Mims , 619 So.2d 1059 (La. 1993) ; State v. Bailey , 50,097 (La. App. 2 Cir. 9/30/15), 180 So.3d 442 ; State v. Osborne , 48,662 (La. App. 2 Cir. 1/15/14), 130 So.3d 1012. See also La. C. Cr. P. art. 881.1(E), which precludes a defendant from presenting sentencing arguments to the court of appeal which were not presented to the trial court. State v. Pittman , 52,027 (La. App. 2 Cir. 4/11/18), 248 So.3d 573.
Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense or shocking to the sense of justice. State v. Lobato , 603 So.2d 739 (La. 1992) ; State v. Davis , 50,149 (La. App. 2 Cir. 11/18/15), 181 So.3d 200 ; State v. Scott , 50,920 (La. App. 2 Cir. 11/16/16), 209 So.3d 248, writ denied , 17-0353 (La. 11/13/17), 229 So.3d 478 ; State v. Pittman , supra .
A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey , 623 So.2d 1276 (La. 1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver , 2001-0467 (La. 1/15/02), 805 So.2d 166 ; State v. Little , 50,776 (La. App. 2 Cir. 8/10/16), 200 So.3d 400, writ denied , *1229 16-1664 (La. 6/16/17), 219 So.3d 341 ; State v. Minor , supra .
As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. State v. Cotten , 50,747 (La. App. 2 Cir. 8/10/16), 201 So.3d 299. The sentencing court has wide discretion in imposing a sentence within statutory limits, and such a sentence will not be set aside as excessive in the absence of manifest abuse of that discretion. State v. Williams , 03-3514 (La. 12/13/04), 893 So.2d 7 ; State v. Duncan , 47,697 (La. App. 2 Cir. 1/16/13), 109 So.3d 921, writ denied , 13-0324 (La. 9/13/13), 120 So.3d 280. The trial court is in the best position to consider the aggravating and mitigating circumstances of a particular case, and, therefore, is given broad discretion in sentencing. State v. Cook , 95-2784 (La. 5/31/96), 674 So.2d 957, cert. denied , 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996) ; State v. Bailey , supra . On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Williams , supra ; State v. Minor , supra .
The applicable penalty provision for La. R.S. 14:81.2 reads as follows:
B. (2) Whoever commits the crime of molestation of a juvenile, when the victim is thirteen years of age or older but has not yet attained the age of seventeen, and when the offender has control or supervision over the juvenile , shall be fined not more than ten thousand dollars, or imprisoned, with or without hard labor, for not less than five nor more than twenty years, or both. The defendant shall not be eligible to have his conviction set aside or his prosecution dismissed in accordance with Code of Criminal Procedure Article 893. [Emphasis supplied.]
Discussion
Prior to sentencing, the trial court ordered a presentence investigation which was reviewed prior to imposing sentence. The court noted that Lewis was a first felony offender, but he had been arrested for possession of methamphetamine, possession of Lortab, and possession of drug paraphernalia. The charges were dismissed in 2004, after the defendant completed a pretrial diversion program. The court observed that, in the present offense, Lewis "introduced drugs into the equation" during his illicit activities with the victim.
The trial court was aware that, in cases involving first offenders, concurrent sentences should be imposed particularly where the convictions arise out of the same course of conduct. The court observed that Lewis was placed in a position of trust and authority over the victim by a visually impaired mother and he used that position to prey upon the young victim who was under his supervision and control. The court stated that Lewis violated his sacred obligation to protect and guide the victim appropriately. According to the trial court, Lewis violated and betrayed the mother's faith and trust and exploited the weak and vulnerable for his own personal gratification.
The trial court read from a letter submitted by AA outlining the devastating impact these offenses had on her life. She stated that she was bullied at school by Lewis's daughter, who was several years older than her. The daughter sent boys to AA who offered to pay her for sex. Lewis's molestation of AA damaged the child's relationship with her mother. AA cut herself with a box cutter, was reluctant to attend school, and started taking Lortab, which Lewis had introduced her to. AA continued to steal this medication from her grandfather. At one point she described overdosing *1230 on the drugs and stated she had developed bulimia.
The trial court noted that Lewis has shown no remorse for these offenses, even though he was convicted by a unanimous jury. The court found that Lewis was in need of a custodial environment and any lesser sentence than that imposed would deprecate the seriousness of the offense. The court ordered that Lewis serve 20 years at hard labor on each offense, with the sentences to be served concurrently.
Lewis argues that, although he is a first felony offender, he received the maximum sentences for the offenses. He contends that maximum sentences are reserved for the worst offenders and the worst offenses. He maintains that neither of these factors are present here.
We find that the trial court appropriately considered Lewis's lack of remorse, his prior arrests involving drugs, the use of drugs in the commission of these offenses, and the devastating impact the offenses had on the victim and her relationship with her mother.
Given the level of the breach of trust involved in taking advantage of the blindness of the victim's mother and the profound negative impact of these offenses on the victim, we do not find that the trial court abused its discretion in the sentences imposed. The sentences do not shock the sense of justice.
CONCLUSION
For the reasons stated above, we affirm the convictions and sentences of the defendant, Larry Lewis, Jr.
AFFIRMED.

To protect the privacy of the victim, she will be referred to by her initials, pursuant to La. R.S. 46:1844(W).

The pertinent portion of La. R.S. 14:81.2, defining the offense of molestation of a juvenile, provides as follows:
A. (1) Molestation of a juvenile is the commission by anyone over the age of seventeen of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by the use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by the use of influence by virtue of a position of control or supervision over the juvenile . Lack of knowledge of the juvenile's age shall not be a defense. [Emphasis supplied.]

Lewis points out that his appeal was technically premature because the order of appeal was entered before sentencing. However, he contends that the appeal should not be dismissed for this reason. We agree. See State v. Goodley , 2016-512 (La. App. 3 Cir. 12/7/16), 209 So.3d 130, writ denied , 17-0147 (La. 9/22/17), 227 So.3d 822 ; State v. Brown , 16-301 (La. App. 5 Cir. 12/7/16), 205 So.3d 1032, writ denied , 17-0163 (La. 9/29/17), 227 So.3d 283.