Judgment rendered April 9, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,225-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

STEVIE NORRIS HENDERSON                     Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 365,097

Honorable John D. Mosely, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT              Counsel for Appellant
By: Douglas Lee Harville

JAMES E. STEWART, JR.                    Counsel for Appellee
District Attorney

KENDRA S. JOSEPH
COURTNEY N. RAY
ERIC M. WHITEHEAD
Assistant District Attorneys

* * * * *

Before PITMAN, COX, and HUNTER, JJ.

**PITMAN, C. J.**

A jury found Defendant Stevie Norris Henderson guilty as charged of attempted second degree murder and of possession of a firearm by a convicted felon. The trial court sentenced him to 20 years at hard labor without the benefit of parole, probation or suspension of sentence for each conviction and ordered these sentences to run consecutively to each other and to any other sentence he is required to serve. Defendant appeals. For the following reasons, we affirm his convictions and sentences.

## FACTS

On May 22, 2019, the state filed a bill of information charging Defendant with one count of attempted first degree murder in violation of La. R.S. 14:27 and 14:30 and one count of possession of a firearm by a convicted felon in violation of La. R.S. 14:95.1. It alleged that on or about February 21, 2019, Defendant had the specific intent to kill Albert Joiner while engaged in the perpetration or attempted perpetration of armed robbery and that Defendant, who had previously been convicted of a felony, unlawfully possessed a firearm. On April 5, 2023, the state filed an amended bill of information regarding count one and alleged that Defendant committed attempted second degree murder in violation of La. R.S. 14:27 and 14:30.1 by shooting Joiner.

A jury trial was held on March 6, 2024. Joiner testified that on February 21, 2019, he lived at 1653 Woodrow Street in Shreveport. He stated that at 9:15 p.m. he was watching television when someone knocked on his door. He looked through the door's peephole and saw Defendant. He noted that he met Defendant a few weeks prior through Janetta Davis, a mutual friend. He opened the door, and Defendant asked him about coming

in and smoking. He later explained that they "indulge[d] in smoking marijuana." Joiner testified that Defendant came inside, they sat down and he (Joiner) bent over to pick up his phone. He saw Defendant "move kind of fast," and when he (Joiner) looked up, he saw Defendant's hand extended and then Defendant shot him in the head. He explained that he heard a pop and that he was "out" for approximately 45 minutes before waking up. He noted that his front door was open, that he did not see Defendant and that Defendant took his marijuana but did not take any money. He went to his neighbor's door, told the neighbor he had been shot and the neighbor called 911. He stated that paramedics arrived and took him to the hospital. He described his injuries and explained that the bullet shattered and that bullet pieces were removed from his scalp. He noted that he was released from the hospital three days after the shooting and that he has experienced pain, headaches, sensitivity to noise and trouble with his memory.

On cross-examination, defense counsel asked if he had scales, baggies or marijuana in his house, as reported by law enforcement. Joiner responded that he did not and suggested that someone framed him. He stated that he did not smoke marijuana, use drugs or drink alcohol on the night he was shot. When defense counsel asked him about the hospital finding opiates, cannabinoids and alcohol in his system, Joiner responded that counsel was lying. Defense counsel asked Joiner about his criminal history, and Joiner agreed that he pled guilty to possession of a Schedule II controlled dangerous substance in 2003 and to felony theft in 2000.

Demetrius Joiner, Albert Joiner's son, testified that on February 21, 2019, he received a telephone call about the shooting, and he drove from his home in Texas to the hospital in Shreveport. When he saw his father, he

noted that at first he was not coherent or able to talk but later was lucid and that his head was swollen. He and his sister cared for their father for several weeks after the shooting because his equilibrium was off, he was a fall risk and he needed constant care. He noted that his father began to improve after two or three months but that he still struggles. On cross-examination, defense counsel asked if his father had been diagnosed with any memory condition, and he could not recall that a condition was named.

Janetta Davis testified that she knew Joiner for many years, previously dated Defendant and that she and Defendant went to Joiner's house with their friend Annette some time before the shooting. Davis stated that after the shooting, she was with Annette when Joiner called Annette and, while on speakerphone, told her that Davis's boyfriend shot him. Davis explained that she did not have a boyfriend at that time and did not know to whom Joiner was referring.

Sergeant Susan Mendels of the Shreveport Police Department testified that on February 21, 2019, she was dispatched to a shooting at 1653 Woodrow Street. She observed Joiner sitting on the couch, leaning on a table with his head in his hands and what appeared to be a bullet wound to the top of his head. On cross-examination, Sgt. Mendels stated that Joiner did not know the name of the person who shot him but that a contact in his cellphone could provide his name. She noted that there was a digital scale on the table in the living room and some marijuana on the floor, but she did not observe any baggies.

Marlon Clark, previously of the Shreveport Police Department, testified that on February 21, 2019, he responded to 1653 Woodrow Street and served as the lead detective on this case. He spoke with officers who

were already on the scene and learned that Joiner had a single gunshot wound, that a neighbor called the police and that Joiner had been transported from the scene. He observed in the living room a .22 caliber expended cartridge casing, some blood and marijuana on the floor. He stated that crime scene investigators photographed the scene, and he discussed the photographs as they were published to the jury. He spoke with Joiner while he was hospitalized, and Joiner did not know the name of the shooter but explained that he knew him through Davis. He stated that Joiner identified Defendant in a photographic lineup. He later spoke with Davis, who stated that Defendant was her ex-boyfriend and provided information about his possible whereabouts. After law enforcement arrested Defendant, he told them that he had nothing to do with the shooting and was with his girlfriend on the day of the shooting. He spoke with the girlfriend, and she told him that Defendant was not at home on the night of the shooting. He also testified about Defendant's criminal history, including a conviction for first degree burglary in 2016 for which he was sentenced to four years' confinement.

On March 6, 2024, a jury found Defendant guilty as charged of attempted second degree murder and of possession of a firearm by a convicted felon.

A sentencing hearing was held on April 23, 2024. Joiner gave a statement about how the shooting has affected him and asked that Defendant receive the maximum sentence. Defense counsel conceded that Defendant had a significant criminal history but asked the trial court to consider that much of it was nonviolent. Counsel stated that at the time of the shooting, Defendant was homeless and perhaps using drugs and suggested that he was

4

under the influence of an extreme mental or emotional disturbance. The trial court considered the facts of the case, including that the victim was shot in the head and left for dead, that a firearm was used in the commission of the crime and that there was a probable likelihood Defendant would commit another crime of this nature. For the conviction of attempted second degree murder, the trial court sentenced Defendant to 20 years at hard labor without the benefit of parole, probation or suspension of sentence. For the conviction of possession of a firearm by a convicted felon, it sentenced Defendant to 20 years at hard labor without the benefit of parole, probation or suspension of sentence. It ordered these sentences to run consecutively to each other and to any other sentence Defendant is required to serve.

Defendant appeals his convictions and sentences.

## DISCUSSION

*Sufficiency of the Evidence*

In his first assignment of error, Defendant argues that the state failed to prove beyond a reasonable doubt that he shot Joiner and therefore that the evidence was insufficient to prove he was guilty of attempted second degree murder or of possession of a firearm by a convicted felon. He alleges that Joiner suffered severe cognitive damage as a result of being shot in the head and could not tell responding officers who shot him. He states that Davis's testimony also casts doubt on the identity of the shooter because Joiner said that Davis's boyfriend shot him, but she denied having a boyfriend at the time of the shooting. Defendant contends that Joiner identified him in the photographic lineup because he was the only person in the lineup Joiner knew. He alleges that Joiner was incoherent and under the effects of pain medications when he identified him as the shooter. Therefore, he argues that

5

the state failed to prove that he shot Joiner, that he tried to kill Joiner or that he was a felon in possession of a firearm.

The state argues that it proved beyond a reasonable doubt that Defendant possessed a firearm as a convicted felon and attempted to murder Joiner. Regarding the attempted murder conviction, the state contends that Defendant's action of shooting Joiner in the head at point-blank range with a .22 caliber firearm demonstrates his specific intent to kill Joiner. It notes that Joiner identified Defendant as the shooter through a photographic lineup and by stating that he could discover Defendant's name through Davis. Regarding the conviction of possession of a firearm by a convicted felon, the state argues that Defendant possessed a firearm when he shot Joiner and that Defendant had previously been convicted of first degree burglary in 2016, within the ten-year statutory period.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Hearold*, 603 So. 2d 731 (La. 1992); *State v. Smith*, 47,983 (La. App. 2 Cir. 5/15/13), 116 So. 3d 884. *See also* La. C. Cr. P. art. 821. The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000). The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442.

Second degree murder is defined as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). An attempt to commit an offense occurs when any person, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object. La. R.S. 14:27(A). Although the statute for the completed crime of second degree murder allows for a conviction based on specific intent to kill or to inflict great bodily harm, attempted second degree murder requires specific intent to kill. *State v. Bishop*, 01-2548 (La. 1/14/03), 835 So. 2d 434. Therefore, to sustain a conviction for attempted second degree murder, the state must prove that the defendant: (1) intended to kill the victim; and (2) committed an overt act tending toward the accomplishment of the victim's death. *Id*.

Specific criminal intent is the state of mind that exists when the circumstances indicate that the offender actively desires the prescribed criminal consequences to follow his act. La. R.S. 14:10(1). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. *State v. Bishop*, *supra*. Specific intent to kill may also be inferred from the extent and severity of the victim's injuries and the defendant's use of a deadly weapon to produce those injuries, which involved serious risk of death. *State v. Minor*, 52,091 (La. App. 2 Cir. 9/26/18), 254 So. 3d 1278. The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill. *Id*.

La. R.S. 14:95.1(A) defines possession of a firearm by a convicted felon and states, in pertinent part:

7

It is unlawful for any person who has been convicted of . . . a crime of violence as defined in R.S. 14:2(B) which is a felony or simple burglary, burglary of an inhabited dwelling, unauthorized entry of an inhabited dwelling, . . . or who has been convicted under the laws of any other state . . . of a crime which, if committed in this state, would be one of the above-enumerated crimes, to possess a firearm or carry a concealed weapon.

La. R.S. 14:95.1(C) adds that this statute shall not apply to any person who has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole or suspension of sentence. To convict a defendant of possession of a firearm by a convicted felon, the state must prove beyond a reasonable doubt: (1) the possession of a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the ten-year statutory period of limitation; and (4) general intent to commit the offense. *State v. Thomas*, 52,617 (La. App. 2 Cir. 5/22/19), 272 So. 3d 999, *writ denied*, 19-01045 (La. 2/10/20), 292 So. 3d 61.

Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crimes in this case beyond a reasonable doubt. Regarding the conviction of attempted second degree murder, the state proved that Defendant intended to kill Joiner and that Defendant committed an overt act tending toward the accomplishment of Joiner's death. Defendant's acts of pointing a firearm at Joiner's head and firing the weapon at close range demonstrate his specific intent to kill Joiner. Regarding the conviction of possession of a firearm by a convicted felon, the state proved that Defendant possessed a firearm; that he was previously convicted of a felony in the State of Georgia, i.e., first degree burglary, which would be an enumerated crime if committed in this state; that the previous conviction was in 2016 and he was sentenced to

8

four years' imprisonment, i.e., within the ten-year statutory period; and that he had the general intent to possess a firearm.

Although Defendant claims that the state did not prove he was the shooter, Joiner, despite the shooting's effects on his memory, maintains that Defendant was the person who shot him in the head. A positive identification by only one witness is sufficient to support a conviction. *See State v. Weary*, 03-3067 (La. 4/24/06), 931 So. 2d 297. Joiner identified Defendant as the shooter in a photographic lineup during the investigation and in the courtroom during the trial. He also consistently expressed to law enforcement that he could learn Defendant's name through Davis, their mutual friend.

Accordingly, this assignment of error lacks merit.

*Excessive Sentences*

In his second assignment of error, Defendant argues that the trial court imposed constitutionally harsh and excessive sentences that are merely punitive. He states that he was homeless and addicted to drugs on the day Joiner was shot. He contends that as he was 46 years old at the time of sentencing, a 40-year sentence is effectively a life sentence. He argues that neither his prior convictions nor his conduct in this matter merit a de facto life sentence.

The state argues that the sentences imposed are not excessive. It contends that the trial court did not abuse its discretion when imposing a cumulative 40-year sentence when the maximum cumulative sentence was 70 years and when Defendant attempted to murder an unsuspecting man in cold blood by shooting him in the head and leaving him for dead.

9

When a defendant fails to make a motion to reconsider sentence, the appellate court's review of the sentence is limited to a bare claim of constitutional excessiveness. *State v. Mims*, 619 So. 2d 1059 (La. 1993). A sentence violates La. Const. art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So. 2d 1, *citing State v. Bonanno*, 384 So. 2d 355 (La. 1980).

The trial court has wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of a manifest abuse of discretion. *State v. Abercrumbia*, 412 So. 2d 1027 (La. 1982). On review, an appellate court does not determine whether another sentence may have been more appropriate but whether the trial court abused its discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7, *citing State v. Cook*, 95-2784 (La. 5/31/96), 674 So. 2d 957. It is within the court's discretion to make sentences consecutive rather than concurrent. *State v. Heath*, 53,559 (La. App. 2 Cir. 11/10/20), 304 So. 3d 1105, *writ denied*, 20-01422 (La. 4/7/21), 313 So. 3d 981.

Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. La. R.S. 14:30.1(B). If the offense so attempted is punishable by life imprisonment, he shall be imprisoned at hard labor for not less than 10 nor more than 50 years without benefit of parole, probation or suspension of sentence. La. R.S. 14:27(D)(1)(a).

Whoever is found guilty of possession of a firearm by a convicted felon shall be imprisoned at hard labor for not less than 5 nor more than

10

20 years without the benefit of probation, parole or suspension of sentence and be fined not less than $1,000 nor more than $5,000. La. R.S. 14:95.1(B)(1).

The trial court imposed sentences within the statutory limits. Considering the seriousness of the attempted second degree murder offense, i.e., shooting an unarmed victim in the head at a close range, a midrange sentence of 20 years at hard labor without the benefit of parole, probation or suspension of sentence is not grossly out of proportion. The maximum sentence of 20 years at hard labor without the benefit of parole, probation or suspension of sentence for the conviction of possession of a firearm by a convicted felon is not a purposeless and needless infliction of pain and suffering. As the trial court acted within its discretion in imposing these consecutive sentences, the sentences shall not be set aside as excessive.

Accordingly, this assignment of error lacks merit.

## ERROR PATENT

A review of the record reveals an error patent. The trial court erred by failing to impose a fine for the conviction of possession of a firearm by a convicted felon, as required by La. R.S. 14:95.1(B)(1). Therefore, this sentence is illegally lenient. An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. La. C. Cr. P. art. 882(A). However, as this court has recognized, we are not required to take such action. *See State v. Bell*, 51,312 (La. App. 2 Cir. 5/17/17), 222 So. 3d 79. The state did not object to the error at the sentencing hearing, and Defendant was not prejudiced by the failure to impose the mandatory fine. Thus, we decline to remand the case for correction of the sentence to include a fine.

11

## CONCLUSION

For the foregoing reasons, we affirm the convictions and sentences of Defendant Stevie Norris Henderson.

**AFFIRMED.**